(Slip Opinion)     OCTOBER TERM, 2005     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ARKANSAS DEPARTMENT OF HEALTH AND HUMAN SERVICES ET AL. *v.* AHLBORN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 04–1506.   Argued February 27, 2006—Decided May 1, 2006

Federal Medicaid law requires participating States to "ascertain the legal liability of third parties . . . to pay for [an individual benefits recipient's] care and services available under the [State's] plan," 42 U. S. C. §1396a(a)(25)(A); to "seek reimbursement for [medical] assistance to the extent of such legal liability," 1396a(a)(25)(B); to enact "laws under which, to the extent that payment has been made . . . for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services," §1396a(a)(25)(H); to "provide that, as a condition of [Medicaid] eligibility . . . , the individual is required . . . (A) to assign the State any rights . . . to payment for medical care from any third party; . . . (B) to cooperate with the State . . . in obtaining [such] payments . . . and . . . (C) . . . in identifying, and providing information to assist the State in pursuing, any third party who may be liable," 1396k(a)(1). Finally, "any amount collected by the State under an assignment made" as described above "shall be retained by the State . . . to reimburse it for [Medicaid] payments made on behalf of" the recipient. §1396k(b). "[T]he remainder of such amount collected shall be paid" to the recipient. *Ibid.* Acting pursuant to its understanding of these provisions, Arkansas passed laws under which, when a state Medicaid recipient obtains a tort settlement following payment of medical costs on her behalf, a lien is automatically imposed on the settlement in an amount equal to Medicaid's costs. When that amount exceeds the portion of the settlement representing medical costs, satisfaction of the State's lien requires payment out of proceeds meant to compensate the recipient for damages distinct

from medical costs, such as pain and suffering, lost wages, and loss of future earnings.

Following respondent Ahlborn's car accident with allegedly negligent third parties, petitioner Arkansas Department of Health Services (ADHS) determined that Ahlborn was eligible for Medicaid and paid providers $215,645.30 on her behalf. She filed a state-court suit against the alleged tortfeasors seeking damages for past medical costs and for other items including pain and suffering, loss of earnings and working time, and permanent impairment of her future earning ability. The case was settled out of court for $550,000, which was not allocated between categories of damages. ADHS did not participate or ask to participate in the settlement negotiations, and did not seek to reopen the judgment after the case was dismissed, but did intervene in the suit and assert a lien against the settlement proceeds for the full amount it had paid for Ahlborn's care. She filed this action in Federal District Court seeking a declaration that the State's lien violated federal law insofar as its satisfaction would require depletion of compensation for her injuries other than past medical expenses. The parties stipulated, *inter alia,* that the settlement amounted to approximately one-sixth of the reasonable value of Ahlborn's claim and that, if her construction of federal law was correct, ADHS would be entitled to only the portion of the settlement ($35,581.47) that constituted reimbursement for medical payments made. In granting ADHS summary judgment, the court held that under Arkansas law, which it concluded did not conflict with federal law, Ahlborn had assigned ADHS her right to recover the full amount of Medicaid's payments for her benefit. The Eighth Circuit reversed, holding that ADHS was entitled only to that portion of the settlement that represented payments for medical care.

*Held:* Federal Medicaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47, and the federal anti-lien provision affirmatively prohibits it from doing so. Arkansas' third-party liability provisions are unenforceable insofar as they compel a different conclusion. Pp. 9–23.

(a) Arkansas' statute finds no support in the federal third-party liability provisions. That ADHS cannot claim more than the portion of Ahlborn's settlement that represents medical expenses is suggested by §1396k(a)(1)(A), which requires that Medicaid recipients, as a condition of eligibility, "assign the State any rights . . . *to payment for medical care* from any third party" (emphasis added), not their rights to payment for, *e.g.,* lost wages. The other statutory language ADHS relies on is not to the contrary, but reinforces the assignment provision's implicit limitation. First, statutory context shows that §1396a(a)(25)(B)'s requirement that States "seek reimbursement for

[medical] assistance *to the extent of such legal liability*" refers to "the legal liability of third parties . . . *to pay for care and services available under the plan,*" §1396a(a)(25)(A) (emphases added). Here, because the tortfeasors accepted liability for only one-sixth of Ahlborn's overall damages, and ADHS has stipulated that only $35,581.47 of that sum represents compensation for medical expenses, the relevant "liability" extends no further than that amount. Second, §1396a(a)(25)(H)'s requirement that the State enact laws giving it the right to recover from liable third parties "to the extent [it made] payment . . . for medical assistance for health care items or services furnished to an individual" does not limit the State's recovery only by the amount it paid out on the recipient's behalf, since the rest of the provision makes clear that the State must be assigned "the rights of [the recipient] to payment by any other party *for such health care items or services.*" (Emphasis added.) Finally, §1396k(b)'s requirement that, where the State actively pursues recovery from the third party, Medicaid be reimbursed fully from "any amount collected by the State under an assignment" before "the remainder of such amount collected" is remitted to the recipient does not show that the State must be paid in full from any settlement. Rather, because the State's assigned rights extend only to recovery of medical payments, what §1396k(b) requires is that the State be paid first out of any damages for medical care before the recipient can recover any of her own medical costs. Pp. 9–13.

   (b) Arkansas' statute squarely conflicts with the federal Medicaid law's anti-lien provision, §1396p(a)(1), which prohibits States from imposing liens "against the property of any individual prior to his death on account of medical assistance paid . . . on his behalf under the State plan." Even if the State's lien is assumed to be consistent with federal law insofar as it encumbers proceeds designated as medical payments, the anti-lien provision precludes attachment or encumbrance of the remainder of the settlement. ADHS' attempt to avoid the anti-lien provision by characterizing the settlement proceeds as not Ahlborn's "property," but as the State's, fails for two reasons. First, because the settlement is not "received from a third party," as required by the state statute, until Ahlborn's chose in action has been reduced to proceeds in her possession, the assertion that any of the proceeds belonged to the State all along lacks merit. Second, the State's argument that Ahlborn lost her property rights in the proceeds the instant she applied for medical assistance is inconsistent with the creation of a statutory lien on those proceeds: ADHS would not need a lien on its own property. Pp. 13–17.

   (c) The Court rejects as unpersuasive ADHS' and the United States' arguments that a rule permitting a lien on more than medical

damages ought to apply here either because Ahlborn breached her
duty to "cooperate" with ADHS or because there is an inherent dan-
ger of manipulation in cases where the parties to a tort case settle
without judicial oversight or input from the State. As
§1396k(a)(1)(C) demonstrates, the duty to cooperate arises princi-
pally, if not exclusively, in proceedings initiated *by the State* to re-
cover from third parties. In any event, the aspersions cast upon Ahl-
born are entirely unsupported; all the record reveals is that ADHS
neither asked to be nor was involved in the settlement negotiations.
Whatever the bounds of the duty to cooperate, there is no evidence
that it was breached here. Although more colorable, the alternative
argument that a rule of full reimbursement is needed generally to
avoid the risk of settlement manipulation also fails. The risk that
parties to a tort suit will allocate away the State's interest can be
avoided either by obtaining the State's advance agreement to an allo-
cation or, if necessary, by submitting the matter to a court for deci-
sion. Pp. 17–19.

(d) Also rejected is ADHS' contention that the Eighth Circuit ac-
corded insufficient weight to two decisions by the Departmental Ap-
peals Board (Board) of the federal Department of Health and Human
Services (HHS) rejecting appeals by two States from denial of reim-
bursement for costs they paid on behalf of Medicaid recipients who
had settled tort claims. Although HHS generally has broad regula-
tory authority in the Medicaid area, the Court declines to treat the
Board's reasoning in those cases as controlling because they address a
different question from the one posed here, make no mention of the
anti-lien provision, and rest on a questionable construction of the
federal third-party liability provisions. Pp. 19–23.

397 F. 3d 620, affirmed.

STEVENS, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–1506

ARKANSAS DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL., PETITIONERS *v.* HEIDI AHLBORN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[May 1, 2006]

JUSTICE STEVENS delivered the opinion of the Court.

When a Medicaid recipient in Arkansas obtains a tort settlement following payment of medical costs on her behalf by Medicaid, Arkansas law automatically imposes a lien on the settlement in an amount equal to Medicaid's costs. When that amount exceeds the portion of the settlement that represents medical costs, satisfaction of the State's lien requires payment out of proceeds meant to compensate the recipient for damages distinct from medical costs—like pain and suffering, lost wages, and loss of future earnings. The Court of Appeals for the Eighth Circuit held that this statutory lien contravened federal law and was therefore unenforceable. *Ahlborn* v. *Arkansas Dept. of Human Servs.*, 397 F. 3d 620 (2005). Other courts have upheld similar lien provisions. See, *e.g.*, *Houghton* v. *Dept. of Health*, 2002 UT 101, 57 P. 3d 1067; *Wilson* v. *Washington*, 142 Wash. 2d 40, 10 P. 3d 1061 (2000) (en banc). We granted certiorari to resolve the conflict, 545 U. S. \_\_\_ (2005), and now affirm.

I

On January 2, 1996, respondent Heidi Ahlborn, then a

19-year-old college student and aspiring teacher, suffered severe and permanent injuries as a result of a car accident. She was left brain damaged, unable to complete her college education, and incapable of pursuing her chosen career. Although she possessed a claim of uncertain value against the alleged tortfeasors who caused her injuries, Ahlborn's liquid assets were insufficient to pay for her medical care. Petitioner Arkansas Department of Health Services (ADHS) accordingly determined that she was eligible for medical assistance and paid providers $215,645.30 on her behalf under the State's Medicaid plan.

ADHS required Ahlborn to complete a questionnaire about her accident, and sent her attorney periodic letters advising him about Medicaid outlays. These letters noted that, under Arkansas law, ADHS had a claim to reimbursement from "any settlement, judgment, or award" obtained by Ahlborn from "a third party who may be liable for" her injuries, and that no settlement "shall be satisfied without first giving [ADHS] notice and a reasonable opportunity to establish its interest."[1] ADHS has never asserted, however, that Ahlborn has a duty to reimburse it out of any other subsequently acquired assets or earnings.

On April 11, 1997, Ahlborn filed suit against two alleged tortfeasors in Arkansas state court seeking compensation for the injuries she sustained in the January 1996 car accident. She claimed damages not only for past medical costs, but also for permanent physical injury; future medical expenses; past and future pain, suffering, and mental anguish; past loss of earnings and working time; and permanent impairment of the ability to earn in the future.

ADHS was neither named as a party nor formally notified of the suit. Ahlborn's counsel did, however, keep ADHS informed of details concerning insurance coverage

_____

[1] Affidavit of Wayne E. Olive, Exhs. 5 and 6 (Mar. 6, 2003).

as they became known during the litigation.

In February 1998, ADHS intervened in Ahlborn's law-suit to assert a lien on the proceeds of any third-party recovery Ahlborn might obtain. In October 1998, ADHS asked Ahlborn's counsel to notify the agency if there was a hearing in the case. No hearing apparently occurred, and the case was settled out of court sometime in 2002 for a total of $550,000. The parties did not allocate the settlement between categories of damages. ADHS did not participate or ask to participate in settlement negotiations. Nor did it seek to reopen the judgment after the case had been dismissed. ADHS did, however, assert a lien against the settlement proceeds in the amount of $215,645.30—the total cost of payments made by ADHS for Ahlborn's care.

On September 30, 2002, Ahlborn filed this action in the United States District Court for the Eastern District of Arkansas seeking a declaration that the lien violated the federal Medicaid laws insofar as its satisfaction would require depletion of compensation for injuries other than past medical expenses. To facilitate the District Court's resolution of the legal questions presented, the parties stipulated that Ahlborn's entire claim was reasonably valued at $3,040,708.18; that the settlement amounted to approximately one-sixth of that sum; and that, if Ahlborn's construction of federal law was correct, ADHS would be entitled to only the portion of the settlement ($35,581.47) that constituted reimbursement for medical payments made. See App. 17–20.

Ruling on cross-motions for summary judgment, the District Court held that under Arkansas law, which it concluded did not conflict with federal law, Ahlborn had assigned to ADHS her right to any recovery from the third-party tortfeasors to the full extent of Medicaid's payments for her benefit. Accordingly, ADHS was entitled to a lien in the amount of $215,645.30.

The Eighth Circuit reversed. It held that ADHS was entitled only to that portion of the judgment that represented payments for medical care. For the reasons that follow, we affirm.

II

The crux of the parties' dispute lies in their competing constructions of the federal Medicaid laws. The Medicaid program, which provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs, was launched in 1965 with the enactment of Title XIX of the Social Security Act (SSA), as added 79 Stat. 343, 42 U. S. C. §1396 *et seq.* (2000 ed. and Supp. III). Its administration is entrusted to the Secretary of Health and Human Services (HHS), who in turn exercises his authority through the Centers for Medicare and Medicaid Services (CMS).[2]

States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care,[3] and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program. See §1396a.

One such requirement is that the state agency in charge of Medicaid (here, ADHS) "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan." §1396a(a)(25)(A) (2000 ed.).[4]   The agency's obligation

_____

[2] Until 2001, CMS was known as the Health Care Financing Administration or HCFA. See 66 Fed. Reg. 35437.

[3] The exact percentage of the federal contribution is calculated pursuant to a formula keyed to each State's per capita income. See 42 U. S. C. §1396d(b).

[4] A "third party" is defined by regulation as "any individual, entity or

extends beyond mere identification, however;

"in any case where such a legal liability is found to ex-
ist after medical assistance has been made available
on behalf of the individual and where the amount of
reimbursement the State can reasonably expect to re-
cover exceeds the costs of such recovery, the State or
local agency will seek reimbursement for such assis-
tance to the extent of such legal liability."
§1396a(a)(25)(B).

To facilitate its reimbursement from liable third parties,
the State must,

"to the extent that payment has been made under the
State plan for medical assistance in any case where a
third party has a legal liability to make payment for
such assistance, [have] in effect laws under which, to
the extent that payment has been made under the
State plan for medical assistance for health care items
or services furnished to an individual, the State is
considered to have acquired the rights of such indi-
vidual to payment by any other party for such health
care items or services." §1396a(a)(25)(H).

The obligation to enact assignment laws is reiterated in
another provision of the SSA, which reads as follows:

"(a) For the purpose of assisting in the collection of
medical support payments and other payments for
medical care owed to recipients of medical assistance
under the State plan approved under this subchapter,
a State plan for medical assistance shall—
"(1) provide that, as a condition of eligibility for
medical assistance under the State plan to an indi-

─────────
program that is or may be liable to pay all or part of the expenditures
for medical assistance furnished under a State plan." 42 CFR §433.136
(2005).

vidual who has the legal capacity to execute an as-
signment for himself, the individual is required—

"(A) to assign the State any rights . . . to support
(specified as support for the purpose of medical care
by a court or administrative order) and to payment for
medical care from any third party;

"(B) to cooperate with the State . . . in obtaining
support and payments (described in paragraph (A))
for himself . . . ; and

"(C) to cooperate with the State in identifying, and
providing information to assist the State in pursuing,
any third party who may be liable to pay for care and
services available under the plan . . . ." §1396k(a).

Finally, "any amount collected by the State under an
assignment made" as described above "shall be retained by
the State as is necessary to reimburse it for medical assis-
tance payments made on behalf of" the Medicaid recipient.
§1396k(b). "[T]he remainder of such amount collected
shall be paid" to the recipient. *Ibid.*

Acting pursuant to its understanding of these third-
party liability provisions, the State of Arkansas passed
laws that purport to allow both ADHS and the Medicaid
recipient, either independently or together, to recover "the
cost of benefits" from third parties. Ark. Code Ann. §§20–
77–301 through 20–77–309 (2001). Initially, "[a]s a condi-
tion of eligibility" for Medicaid, an applicant "shall auto-
matically assign his or her right to any settlement, judg-
ment, or award which may be obtained against any third
party to [ADHS] to the full extent of any amount which
may be paid by Medicaid for the benefit of the applicant."
§20–77–307(a). Accordingly, "[w]hen medical assistance
benefits are provided" to the recipient "because of injury,
disease, or disability for which another person is liable,"
ADHS "shall have a right to recover from the person the

cost of benefits so provided." §20–77–301(a).[5] ADHS' suit "shall" not, however, "be a bar to any action upon the claim or cause of action of the recipient." §20–77–301(b). Indeed, the statute envisions that the recipient will sometimes sue together with ADHS, see §20–77–303, or even alone. If the latter, the assignment described in §20–77–307(a) "shall be considered a statutory lien on any settlement, judgment, or award received . . . from a third party." §20–77–307(c); see also §20–77–302(a) ("When an action or claim is brought by a medical assistance recipient . . . , any settlement, judgment, or award obtained is subject to the division's claim for reimbursement of the benefits provided to the recipient under the medical assistance program").[6]

The State, through this statute, claims an entitlement to more than just that portion of a judgment or settlement that represents payment for medical expenses. It claims a right to recover the entirety of the costs it paid on the Medicaid recipient's behalf. Accordingly, if, for example, a recipient sues alone and settles her entire action against a third-party tortfeasor for $20,000, and ADHS has paid that amount or more to medical providers on her behalf, ADHS gets the whole settlement and the recipient is left with nothing. This is so even when the parties to the settlement allocate damages between medical costs, on the one hand, and other injuries like lost wages, on the other.

––––––––––

[5] Under the Arkansas statute, ADHS' right to recover medical costs appears to be broader than that of the recipient. When ADHS sues, "no contributory or comparative fault of a recipient shall be attributed to the state, nor shall any restitution awarded to the state be denied or reduced by any amount or percentage of fault attributed to a recipient." §20–77–301(d)(1) (2001).

[6] The Arkansas Supreme Court has held that ADHS has an independent, nonderivative right to recover the cost of benefits from a third-party tortfeasor under §20–77–301 even when the Medicaid recipient also sues for recovery of medical expenses. See *National Bank of Commerce* v. *Quirk*, 323 Ark. 769, 792–794, 918 S. W. 2d 138, 151–152 (1996).

The same rule also would apply, it seems, if the recovery were the result not of a settlement but of a jury verdict. In that case, under the Arkansas statute, ADHS could recover the full $20,000 in the face of a jury allocation of, say, only $10,000 for medical expenses.[7]

That this is what the Arkansas statute requires has been confirmed by the State's Supreme Court. In *Arkansas Dept. of Human Servs.* v. *Ferrel*, 336 Ark. 297, 984 S. W. 2d 807 (1999), the court refused to endorse an equitable, nontextual interpretation of the statute. Rejecting a Medicaid recipient's argument that he ought to retain some of a settlement that was insufficient to cover both his and Medicaid's expenses, the court explained:

> "Given the clear, unambiguous language of the statute, it is apparent that the legislature intended that ADHS's ability to recoup Medicaid payments from third parties or recipients not be restricted by equitable subrogation principles such as the 'made whole' rule stated in [*Franklin* v. *Healthsource of Arkansas*, 328 Ark. 163, 942 S. W. 2d 837 (1997)]. By creating an automatic legal assignment which expressly becomes a statutory lien, [Ark. Code Ann. §20–77–307 (1991)] makes an unequivocal statement that the ADHS's ability to recover Medicaid payments from insurance settlements, if it so chooses, is superior to that of the recipient even when the settlement does not pay all the recipient's medical costs." *Id.*, at 308, 984 S. W. 2d, at 811.

Accordingly, the Arkansas statute, if enforceable against Ahlborn, authorizes imposition of a lien on her settlement proceeds in the amount of $215,645.30. Ahlborn's argu-

---

[7] ADHS denies that it would actually demand the full $20,000 in such a case, see Brief for Petitioners 49, n. 13, but points to no provision of the Arkansas statute that would prevent it from doing so.

ment before the District Court, the Eighth Circuit, and this Court has been that Arkansas law goes too far. We agree. Arkansas' statute finds no support in the federal third-party liability provisions, and in fact squarely conflicts with the anti-lien provision of the federal Medicaid laws.

## III

We must decide whether ADHS can lay claim to more than the portion of Ahlborn's settlement that represents medical expenses.[8] The text of the federal third-party liability provisions suggests not; it focuses on recovery of payments for medical care. Medicaid recipients must, as a condition of eligibility, "assign the State any rights . . . *to payment for medical care* from any third party," 42 U. S. C. §1396k(a) (1)(A) (emphasis added), not rights to payment for, for example, lost wages. The other statutory language that ADHS relies upon is not to the contrary; indeed, it reinforces the limitation implicit in the assignment provision.

First, ADHS points to §1396a(a)(25)(B)'s requirement that States "seek reimbursement for [medical] assistance *to the extent of such legal liability*" (emphasis added) and suggests that this means that the entirety of a recipient's settlement is fair game. In fact, as is evident from the context of the emphasized language, "such legal liability" refers to "the legal liability of third parties . . . *to pay for care and services available under the plan.*" §1396a(a)(25)(A) (emphasis added). Here, the tortfeasor

---

[8] The parties here assume, as do we, that a State can fulfill its obligations under the federal third-party liability provisions by requiring an "assignment" of part of, or placing a lien on, the settlement that a Medicaid recipient procures on her own. Cf. §§1396k(a)(B)–(C) (the recipient has a duty to identify liable third parties and to "provid[e] information to *assist the State in pursuing*" those parties (emphasis added)).

has accepted liability for only one-sixth of the recipient's
overall damages, and ADHS has stipulated that only
$35,581.47 of that sum represents compensation for medi-
cal expenses. Under the circumstances, the relevant
"liability" extends no further than that amount.[9]

Second, ADHS argues that the language of
§1396a(a)(25)(H) favors its view that it can demand full
reimbursement of its costs from Ahlborn's settlement.
That provision, which echoes the requirement of a manda-
tory assignment of rights in §1396k(a), says that the State
must have in effect laws that, "to the extent that payment
has been made under the State plan for medical assistance
for health care items or services furnished to an individ-
ual," give the State the right to recover from liable third
parties. This must mean, says ADHS, that the agency's
recovery is limited only by the amount it paid out on the
recipient's behalf—and not by the third-party tortfeasor's
particular liability for medical expenses. But that reading
ignores the rest of the provision, which makes clear that
the State must be assigned "the rights of [the recipient] to
payment by any other party *for such health care items or
services*." §1396a(a)(25)(H) (emphasis added). Again, the
statute does not sanction an assignment of rights to pay-
ment for anything other than medical expenses—not lost
wages, not pain and suffering, not an inheritance.

Finally, ADHS points to the provision requiring that,
where the State actively pursues recovery from the third
party, Medicaid be reimbursed fully from "any amount
collected by the State under an assignment" before "the
remainder of such amount collected" is remitted to the
recipient. §1396k(b). In ADHS' view, this shows that the

---

[9] The effect of the stipulation is the same as if a trial judge had found
that Ahlborn's damages amounted to $3,040,708.12 (of which
$215,645.30 were for medical expenses), but because of her contributory
negligence, she could only recover one-sixth of those damages.

State must be paid in full from any settlement. See Brief for Petitioners 13. But, even assuming the provision applies in cases where the State does not actively participate in the litigation, ADHS' conclusion rests on a false premise: The "amount recovered . . . under an assignment" is not, as ADHS assumes, the entire settlement; as explained above, under the federal statute the State's assigned rights extend only to recovery of payments for medical care. Accordingly, what §1396k(b) requires is that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care.[10]

At the very least, then, the federal third-party liability provisions *require* an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care.[11] They did not mandate

_____

[10] Implicit in ADHS' interpretation of this provision is the assumption that there can be no "remainder" to remit to the Medicaid recipient if all the State has been assigned is the right to damages for medical expenses. That view in turn seems to rest on an assumption either that Medicaid will have paid all the recipient's medical expenses or that Medicaid's expenses will always exceed the portion of any third-party recovery earmarked for medical expenses. Neither assumption holds up. First, as both the Solicitor General and CMS acknowledge, the recipient often will have paid medical expenses out of her own pocket. See Brief for United States as *Amicus Curiae* 12 (under §1396k(b), "the beneficiary retains the right to payment for any additional medical expenses personally incurred either before or subsequent to Medicaid eligibility and for other damages"); CMS, State Medicaid Manual §3907 (last modified Sept. 16, 2005) (envisioning that "medical insurance payments," for example, will be remitted to the recipient if possible). Second, even if Medicaid's outlays often exceed the portion of the recovery earmarked for medical expenses in tort cases, the third-party liability provisions were not drafted exclusively with tort settlements in mind. In the case of health insurance, for example, the funds available under the policy may be enough to cover both Medicaid's costs and the recipient's own medical expenses.

[11] ADHS concedes that, had a jury or judge allocated a sum for medical payments out of a larger award in this case, the agency would be

the enactment of the Arkansas scheme that we have described.

## IV

If there were no other relevant provisions in the federal statute, the State might plausibly argue that federal law supplied a recovery "floor" upon which States were free to build. In fact, though, the federal statute places express limits on the State's powers to pursue recovery of funds it paid on the recipient's behalf. These limitations are contained in 42 U. S. C. §§1396a(a)(18) and 1396p. Section 1396a(a)(18) requires that a State Medicaid plan comply with §1396p, which in turn prohibits States (except in circumstances not relevant here) from placing liens against, or seeking recovery of benefits paid from, a Medicaid recipient:

> "(a) Imposition of lien against property of an individual on account of medical assistance rendered to him under a State plan
>
> "(1) No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except—
>
> "(A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or
>
> "(B) [in certain circumstances not relevant here] . . . .

—————————

entitled to reimburse itself only from the portion so allocated. See Brief for Petitioners 49, n. 13; see also Brief for United States as *Amicus Curiae* 22, n. 14 (noting that the Secretary of HHS "ordinarily accepts" a jury allocation of medical damages in satisfaction of the Medicaid debt, even where smaller than the amount of Medicaid's expenses). Given the stipulation between ADHS and Ahlborn, there is no textual basis for treating the settlement here differently from a judge-allocated settlement or even a jury award; all such awards typically establish a third party's "liability" for both "payment for medical care" and other heads of damages.

"(b) Adjustment or recovery of medical assistance correctly paid under a State plan

"(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except [in circumstances not relevant here]." §1396p.

Read literally and in isolation, the anti-lien prohibition contained in §1396p(a) would appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care.[12] Ahlborn does not ask us to go so far, though; she assumes that the State's lien is consistent with federal law insofar as it encumbers proceeds designated as payments for medical care. Her argument, rather, is that the anti-lien provision precludes attachment or encumbrance of the remainder of the settlement.

We agree. There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§1396a(a)(25) and 1396k(a). And we assume, as do the parties, that the State can also demand as a condition of Medicaid eligibility that the recipient "assign" in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§1396a(a)(25) and 1396k(a), it is an exception to the anti-

---

[12] Likewise, subsection (b) would appear to forestall any attempt by the State to recover benefits paid, at least from the "individual." See, *e.g.*, *Martin ex rel. Hoff* v. *Rochester*, 642 N. W. 2d 1, 8, n. 6 (Minn. 2002); *Wallace* v. *Estate of Jackson*, 972 P. 2d 446, 450 (Utah 1998) (Durham, J., dissenting) (reading §1396p to "prohibi[t] not only liens against Medicaid recipients but also any recovery for medical assistance correctly paid"). The parties here, however, neither cite nor discuss the anti-recovery provision of §1396p(b). Accordingly, we leave for another day the question of its impact on the analysis.

lien provision. See *Washington State Dept. of Social and
Health Servs.* v. *Guardianship Estate of Keffeler,* 537 U. S.
371, 383–385, and n. 7 (2003). But that does not mean that
the State can force an assignment of, or place a lien on,
any other portion of Ahlborn's property. As explained
above, the exception carved out by §§1396a(a)(25) and
1396k(a) is limited to payments for medical care. Beyond
that, the anti-lien provision applies.

ADHS tries to avoid the anti-lien provision by character-
izing the settlement proceeds as not Ahlborn's "prop-
erty."[13] Its argument appears to be that the automatic
assignment effected by the Arkansas statute rendered the
proceeds the property of the State.[14] See Brief for Peti-
tioners 31 ("[U]nder Arkansas law, the lien does not attach
to the recipient's 'property' because it attaches only to
those proceeds already assigned to the Department as a
condition of Medicaid eligibility"). That argument fails for
two reasons. First, ADHS insists that Ahlborn at all
times until judgment retained her entire chose in action—
a right that included her claim for medical damages. The
statutory lien, then, cannot have attached until the pro-
ceeds materialized. That much is clear from the text of
the Arkansas statute, which says that the "assignment
shall be considered a statutory lien on any settlement . . .
*received by the recipient from a third party.*" Ark. Code
Ann. §20–77–307(c) (2001) (emphasis added). The settle-

––––––––––

[13] "Property" is defined by regulation as "the homestead and all other
personal and real property in which the recipient has a legal interest."
42 CFR §433.36(b) (2005).

[14] The United States as *amicus curiae* makes the different argument
that the proceeds never became Ahlborn's "property" because "to the
extent the third party's payment passes through the recipient's hands
en route to the State, it comes with the State's lien already attached."
Brief as *Amicus Curiae* 18. Even if that reading were consistent with
the Arkansas statute (and it is not, see *infra*, at 16), the United States'
characterization of the "assignment" simply reinforces Ahlborn's point:
This is a lien that attaches *to the property of the recipient.*

ment is not "received" until the chose in action has been reduced to proceeds in Ahlborn's possession. Accordingly, the assertion that any of the proceeds belonged to the State all along lacks merit.

Second, the State's argument that Ahlborn lost her property rights in the proceeds the instant she applied for medical assistance is inconsistent with the creation of a statutory lien on those proceeds. Why, after all, would ADHS need a lien on its own property? A lien typically is imposed on the property of *another* for payment of a debt owed by that other. See Black's Law Dictionary 922 (6th ed. 1990). Nothing in the Arkansas statute defines the term otherwise.

That the lien is also called an "assignment" does not alter the analysis. The terms that Arkansas employs to describe the mechanism by which it lays claim to the settlement proceeds do not, by themselves, tell us whether the statute violates the anti-lien provision. See *United States* v. *Craft,* 535 U. S. 274, 279 (2002); *Drye* v. *United States,* 528 U. S. 49, 58–61 (1999). Although denominated an "assignment," the effect of the statute here was not to divest Ahlborn of all her property interest; instead, Ahlborn retained the right to sue for medical care payments, and the State asserted a right to the fruits of that suit once they materialized. In effect, and as at least some of the statutory language recognizes, Arkansas has imposed a lien on Ahlborn's property.[15] Since none of the federal

————————

[15] Because ADHS insists that "Arkansas law did *not* require Ahlborn to assign her claim or her right to sue," Brief for Petitioners 33 (emphasis in original), we need not reach the question whether a State may force a recipient to assign a chose in action to receive as much of the settlement as is necessary to pay Medicaid's costs. The Eighth Circuit thought this would be impermissible because the State cannot "circumvent the restrictions of the federal anti-lien statute simply by requiring an applicant for Medicaid benefits to assign property rights to the State before the applicant liquidates the property to a sum certain." App. to Pet. for Cert. 6. Indeed, ADHS acknowledges that Arkansas cannot, for

third-party liability provisions excepts that lien from operation of the anti-lien provision, its imposition violates federal law.

## V

ADHS and its *amici* urge, however, that even if a lien on more than medical damages would violate federal law in some cases, a rule permitting such a lien ought to apply here either because Ahlborn breached her duty to "cooperate" with ADHS or because there is an inherent danger of manipulation in cases where the parties to a tort case settle without judicial oversight or input from the State. Neither argument is persuasive.

The United States proposes a default rule of full reimbursement whenever the recipient breaches her duty to "cooperate," and asserts that Ahlborn in fact breached that duty.[16] But, even if the Government's allegations of obstruction were supported by the record, its conception of the duty to cooperate strays far beyond the text of the statute and the relevant regulations. The duty to cooperate arises principally, if not exclusively, in proceedings initiated *by the State* to recover from third parties. See 42 U. S. C. §1396k(a)(1)(C) (recipients must "cooperate with

_____

example, require a Medicaid applicant to assign in advance any right she may have to recover an inheritance or an award in a civil case not related to her injuries or medical care. This arguably is no different; as with assignment of those other choses in action, assignment of the right to compensation for lost wages and other nonmedical damages is nowhere authorized by the federal third-party liability provisions.

[16] See, *e.g.*, Brief for United States as *Amicus Curiae* 14 (alleging that Ahlborn "omitt[ed] or understat[ed] the medical damages claim from her lawsuit and attempt[ed] to horde for herself the third-party liability payments"); *id.*, at 15 ("[H]aving forsaken her federal and state statutory duties of candid and forthcoming cooperation . . . [,] respondent, rather than the taxpayers, must bear the financial consequences of her actions"); *id.*, at 21, 24 (referring to Ahlborn's "backdoor settlement" and "obstruction and attrition," as well as her "calculated evasion of her legal obligations").

the State in identifying . . . and providing information to assist the State in pursuing" third parties). Most of the accompanying federal regulations simply echo this basic duty; all they add is that the recipient must "[p]ay to the agency any support or medical care funds received that are covered by the assignment of rights." 42 CFR §433.147(b)(4) (2005).

In any event, the aspersions the United States casts upon Ahlborn are entirely unsupported; all the record reveals is that ADHS, despite having intervened in the lawsuit and asked to be apprised of any hearings, neither asked to be nor was involved in the settlement negotiations. Whatever the bounds of the duty to cooperate, there is no evidence that it was breached here.

ADHS' and the United States' alternative argument that a rule of full reimbursement is needed generally to avoid the risk of settlement manipulation is more colorable, but ultimately also unpersuasive. The issue is not, of course, squarely presented here; ADHS has stipulated that only $35,581.47 of Ahlborn's settlement proceeds properly are designated as payments for medical costs. Even in the absence of such a post-settlement agreement, though, the risk that parties to a tort suit will allocate away the State's interest can be avoided either by obtaining the State's advance agreement to an allocation or, if necessary, by submitting the matter to a court for decision.[17] For just as there are risks in underestimating the value of readily calculable damages in settlement negotiations, so also is there a countervailing concern that a rule

_____

[17]As one *amicus* observes, some States have adopted special rules and procedures for allocating tort settlements in circumstances where, for example, private insurers' rights to recovery are at issue. See Brief for Association of Trial Lawyers of America 20–21. Although we express no view on the matter, we leave open the possibility that such rules and procedures might be employed to meet concerns about settlement manipulation.

of absolute priority might preclude settlement in a large number of cases, and be unfair to the recipient in others.[18]

## VI

Finally, ADHS contends that the Court of Appeals' decision below accords insufficient weight to two decisions by the Departmental Appeals Board of HHS (Board) rejecting appeals by the States of California and Washington from denial of reimbursement for costs those States paid on behalf of Medicaid recipients who had settled tort claims. See App. to Pet. for Cert. 45–67 (reproducing *In re Washington State Dept. of Social & Health Servs.,* Dec. No. 1561, 1996 WL 157123 (HHS Dept. App. Bd., Feb. 7, 1996)); App. to Pet. for Cert. 68–86 (reproducing *In re California Dept. of Health Servs.*, Dec. No. 1504, 1995 WL 66334 (HHS Dept. App. Bd., Jan. 5, 1995)). Because the opinions in those cases address a different question from the one posed here, make no mention of the anti-lien provision, and, in any event, rest on a questionable construction of the federal third-party liability provisions, we conclude that they do not control our analysis.

Normally, if a State recovers from a third party the cost of Medicaid benefits paid on behalf of a recipient, the Federal Government owes the State no reimbursement, and any funds already paid by the Federal Government must be returned. See 42 CFR §433.140(a)(2) (2005) (federal financial participation "is not available in Medi-

---

[18]The point is illustrated by state cases involving the recovery of workers' compensation benefits paid to an employee (or the family of an employee) whose injuries were caused by a third-party tortfeasor. In *Flanigan* v. *Department of Labor and Industry*, 123 Wash. 2d 418, 869 P. 2d 14 (1994), for example, the court concluded that the state agency could not satisfy its lien out of damages the injured worker's spouse recovered as compensation for loss of consortium. The court explained that the department could not "share in damages for which it has provided no compensation" because such a result would be "absurd and fundamentally unjust." *Id.*, at 426, 869 P. 2d, at 17.

caid payments if . . . [t]he agency received reimbursement from a liable third party"); §433.140(c). Washington and California both had adopted schemes according to which the State refrained from claiming full reimbursement from tort settlements and instead took only a portion of each settlement. (In California, the recipient typically could keep at least 50% of her settlement, see App. to Pet. for Cert. 72; in Washington, the proportion varied from case to case, see *id.*, at 48–51.) Each scheme resulted in the State's having to pay a portion of the recipient's medical costs—a portion for which the State sought partial reimbursement from the Federal Government. CMS (then called HCFA) denied this partial reimbursement on the ground that the States had an absolute duty to seek full payment of medical expenses from third-party tortfeasors.

The Board upheld CMS' determinations. In California's appeal, which came first, the Board concluded that the State's duty to seek recovery of benefits "from available third party sources to the fullest extent possible" included demanding full reimbursement from the entire proceeds of a Medicaid recipient's tort settlement. *Id.*, at 76. The Board acknowledged that §1396k(a) "refers to assignment only of 'payment for medical care,'" but thought that "the statutory scheme as a whole contemplates that the actual recovery might be greater and, if it is, that Medicaid should be paid first." *Ibid.* The Board gave two other reasons for siding with CMS: First, the legislative history of the third-party liability evinced a congressional intent that "the Medicaid program . . . be reimbursed from available third party sources to the fullest extent possible," *ibid.;* and, second, California had long been on notice that it would not be reimbursed for any shortfall resulting from failure to fully recoup Medicaid's costs from tort settlements, see *id.*, at 77. The Board also opined that the State could not escape its duty to seek full reimbursement by relying on the Medicaid recipient's efforts in litigating her

claims. See *id.*, at 79–80.

Finally, responding to the State's argument that its scheme gave Medicaid recipients incentives to sue third-party tortfeasors and thus resulted in both greater recovery and lower costs for the State, the Board observed that "a state is free to allow recipients to retain the state's share" of any recovery, so long as it does not compromise the Federal Government's share. *Id.*, at 85.

The Board reached the same conclusion, by the same means, in the Washington case. See *id.*, at 53–64.

Neither of these adjudications compels us to conclude that Arkansas' statutory lien comports with federal law. First, the Board's rulings address a different question from the one presented here. The Board was concerned with the Federal Government's obligation to reimburse States that had, in its view, failed to seek full recovery of Medicaid's costs and had instead relied on recipients to act as private attorneys general. The Board neither discussed nor even so much as cited the federal anti-lien provision.

Second, the Board's acknowledgment that the assignment of rights required by §1396k(a) is limited to payments for medical care only reinforces the clarity of the statutory language. Moreover, its resort to "the statutory scheme as a whole" as justification for muddying that clarity is nowhere explained. Given that the only statutory provisions CMS relied on are §§1396a(a)(25), 1396k(a), and 1396k(b), see *id.*, at 75–76; *id.*, at 54–55, and given the Board's concession that the first two of these limit the State's assignment to payments for medical care, the "statutory scheme" must mean §1396k(b). But that provision does not authorize the State to demand reimbursement from portions of the settlement allocated or allocable to nonmedical damages; instead, it gives the State a priority disbursement from the medical expenses portion alone. See *supra*, at 12. In fact, in its adjudication in the Washington case, the Board conceded as much:

"[CMS] may require a state to assert a collection priority over funds obtained by Medicaid recipients in [third-party liability] suits *even though the distribution methodology set forth in section [1396k(b)] refers only to payments collected pursuant to assignments for medical care.*"  App. to Pet. for Cert. 54 (emphasis added).  The Board's reasoning therefore is internally inconsistent.

Third, the Board's reliance on legislative history is misplaced.  The Board properly observed that Congress, in crafting the Medicaid legislation, intended that Medicaid be a "payer of last resort."  S. Rep. No. 99–146, p. 313 (1985).  That does not mean, however, that Congress meant to authorize States to seek reimbursement from Medicaid recipients themselves; in fact, with the possible exception of a lien on payments for medical care, the statute expressly prohibits liens against the property of Medicaid beneficiaries.  See 42 U. S. C. §1396p(a).  We recognize that Congress has delegated "broad regulatory authority to the Secretary [of HHS] in the Medicaid area," *Wisconsin Dept. of Health and Family Servs.* v. *Blumer,* 534 U. S. 473, 496, n. 13 (2002), and that agency adjudications typically warrant deference.  Here, however, the Board's reasoning couples internal inconsistency with a conscious disregard for the statutory text.  Under these circumstances, we decline to treat the agency's reasoning as controlling.

## VII

Federal Medicaid law does not authorize ADHS to assert a lien on Ahlborn's settlement in an amount exceeding $35,581.47, and the federal anti-lien provision affirmatively prohibits it from doing so.  Arkansas' third-party liability provisions are unenforceable insofar as they compel a different conclusion.  The judgment of the Court of Appeals is affirmed.

*It is so ordered.*