WYNN, Judge, dissenting.
Because I find that our Supreme Court has not yet squarely answered the question presented to us by this case, I certify by dissent for a decision on the issue of whether the amount of the State Division of Medical Assistance's subrogation claim on a Medicaid recipient's settlement is controlled by the United States Supreme Court decision in Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006).
Preliminarily, I observe that our state Supreme Court's reversal of this Court's decision in Ezell v. Grace Hospital, Inc. was explained only as "[f]or the reasons stated in the dissenting opinion."[4] At the time of this Court's dissenting opinion, the Ahlborn decision had not yet been handed down by the United States Supreme Court. As such, the dissenting opinion adopted by our Supreme Court neither considered nor mentioned Ahlborn. Moreover, immediately after the issuance of the Ahlborn decision, our Supreme Court declined to grant a rehearing in Ezell with the one-word reply, "Denied." In denying the plaintiff's petition for rehearing, the Ahlborn decision was again neither addressed nor mentioned. Thus, Ezell offers no guidance for determining the inapplicability of the Ahlborn holding to this case, and I cannot discern a basis for why the United States Supreme Court decision should not control the outcome.
Accordingly, because the North Carolina statute at issue in this case is materially indistinguishable from the Arkansas statutory provisions found by a unanimous United States Supreme Court in Ahlborn to be preempted by federal law, I respectfully dissent.
The relevant North Carolina statutes provide that, by accepting medical assistance from the State, "the recipient shall be deemed to have made an assignment to the State of the right to third party benefits, contractual or otherwise, to which he may be entitled." N.C. Gen.Stat. § 108A-59(a) (2005). In turn, "to the extent of payments under [the Medical Assistance Program], the State, or the county providing medical assistance benefits, shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of this assistance . . . against any person[,]" although "the amount paid to the Department shall not exceed one-third of the gross amount obtained or recovered." Id. § 108A-57(a).
Likewise, the Arkansas statute at issue in the Ahlborn case gave that state the "right to recover from the person the cost of benefits so provided[,]" when medical assistance benefits were provided "because of injury, disease, or disability for which another person is liable[.]" Ark.Code Ann. § 20-77-301(a) (2005). Further, "any settlement, judgment, or award obtained [by the individual] is subject to the division's claim for reimbursement of the benefits provided to the recipient under the medical assistance program." Id. § 20-77-302(a). After paying attorney's fees and expenses, the Arkansas Department of Human Services (ADHS) would "receive an amount sufficient to reimburse the department the full amount of benefits paid on behalf of the recipient under the medical assistance program[,]" with "[t]he remainder *445 [to] be awarded to the medical assistance recipient." Id. § 20-77-302(b). The assignment was considered a condition of Medicaid benefits and an automatic statutory lien on any settlement with a third party. Id. § 20-77-307.
The principal difference between the North Carolina and Arkansas statutes is that the latter provides no ceiling or limit on the amount of recovery allowed to the ADHS; rather, the statute explicitly stated that ADHS was entitled to recover the full amount of the benefits paid to the recipient. Id. § 20-77-302(b). North Carolina, by contrast, allows DMA to take at most one-third of the gross amount of the settlement, regardless of whether that fully satisfies the amount paid in medical benefits. N.C. Gen. Stat. § 108A-57(a). Nevertheless, the basic thrust of the statutes is the same: under both, the State has an automatic lien on the full amount of any settlement with a third party reached by a Medicaid settlement, regardless of what expenses or damages those funds are designated to compensate.
In Ahlborn, the United States Supreme Court focused on that specific issue, stating, "We must decide whether ADHS can lay claim to more than the portion of [the recipient's] settlement that represents medical expenses." 547 U.S. at 280, 126 S.Ct. at 1760, 164 L.Ed.2d at 471. The holding of the Court was that ADHS could not:
The text of the federal third-party liability provisions suggests not; it focuses on recovery of payments for medical care. Medicaid recipients must, as a condition of eligibility, "assign the State any rights . . . to payment for medical care from any third party," 42 U.S.C. § 1396k(a)(1)(A) (emphasis added), not rights to payment for, for example, lost wages.
Id., 126 S.Ct. at 1760-61. Even more explicitly:
[A]s explained above, under the federal statute the State's assigned rights extend only to recovery of payments for medical care. Accordingly, what § 1396k(b) requires is that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care.
Id. at 281, 126 S.Ct. at 1761, 164 L.Ed.2d at 472.
Moreover, the United States Supreme Court found that the Arkansas statute conflicted with the federal statute's "express limits on the State's powers to pursue recovery of funds it paid on the recipient's behalf[,]" namely, the anti-lien provisions of 42 U.S.C. §§ 1396a(a)(18) and 1396p. Id. at 283, 126 S.Ct. at 1762, 164 L.Ed.2d at 473. According to the Supreme Court:
There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a). And we assume, as do the parties, that the State can also demand as a condition of Medicaid eligibility that the recipient "assign" in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. . . . But that does not mean that the State can force an assignment of, or place a lien on, any other portion of [the recipient's] property. As explained above, the exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.
Id. at 284-85, 126 S.Ct. at 1763, 164 L.Ed.2d at 474 (citation omitted and emphasis added). Thus, the Arkansas statute - and likewise, our North Carolina statute - conflicts with federal Medicaid statutes by allowing the State to recover from a recipient settlement funds that were for purposes other than medical expenses.
In the instant case, Katelyn and her parents brought suit against the hospital, doctors, and nurses charged with her birth for damages including, but not limited to, mental and physical pain and anguish, severe and permanent injury, past medical expenses paid by Medicaid, her insurance company, and her parents, future medical expenses, loss of future earnings, disfigurement and *446 loss of normal use of her body, her parents' expenses for education and life care, and her parents' emotional distress and derivative claims. These claims were settled among all parties, with proceeds held in a single account and no allocations made as to specific amounts for which particular claim. Although the settlement is in excess of three times the amount of medical expenses paid by DMA, such that DMA could receive full reimbursement without violating the provisions of N.C. Gen.Stat. § 108A-57(a), the holding of Ahlborn dictates that the trial court must hold an evidentiary hearing as to what portion of the settlement is designated for medical expenses prior to determination of the amount of repayment to be made to DMA.
Accordingly, I respectfully dissent.
---------------
---------------