*836 OPINION OF THE COURT
Douglas E. McKeon, J.
At a time when states across the nation wrestle with the reality that the cost of governance must be reduced, certainly expenses related to Medicaid, this court is invited to reduce Medicaid liens enforceable against plaintiff’s settlement proceeds by the states of New York and Connecticut based on the holdings of Arkansas Dept. of Health & Human Servs. v Ahlborn (547 US 268 [2006] [Ahlborn]) and Lugo v Beth Israel Med. Ctr. (13 Misc. 3d 681 [Sup Ct, NY County 2006] [Lugo]). For reasons discussed infra, this court declines the invitation.
This is a medical malpractice action which was settled before the undersigned on June 16, 2010 for $4,904,149.16. Settlement was achieved after many months of negotiations, including a significant hiatus to permit plaintiffs counsel an opportunity to ascertain the amount of a Connecticut Medicaid lien.
When the amounts of all Medicaid liens were known, plaintiff’s counsel insisted that the New York City Health and Hospitals Corporation significantly raise a pending settlement offer so that both Medicaid liens could be satisfied in toto. Parenthetically, this court was present during all settlement negotiations. After the parties agreed on a settlement amount ($4,904,149.16), a record was made in open court.
The following excerpt is relevant to the issues raised in the instant motion:
“mr nolan [plaintiffs counsel]: The balance of the gross settlement of $4,904,149 after purchase of the structured payments, the structured policies that were just recited, will be paid in cash and out of that cash will be paid the attorneys’ fees and disbursements and satisfaction of all liens including the Medicaid liens in the State of New York and State of Connecticut” (emphasis supplied).
Now, after plaintiffs counsel drove up the cost of the settlement because he represented that he would satisfy all Medicaid liens, he requests an allocation hearing, pursuant to Ahlborn and Lugo, to reduce the amounts of the Medicaid liens. Of course, any postsettlement reduction of the liens achieves an unintended and undeserved windfall for plaintiff and deprives Medicaid of its share of settlement proceeds expressly paid to satisfy existing liens. Ahlborn does not support such a result. To the extent plaintiff claims Lugo does (a view this court does not share), this court declines to follow it. Thus, plaintiffs motion is denied.
*837 Reduced to its basics, Ahlborn stands for the proposition that a state or local social services agency may only recover a Medicaid lien arising from the tortious conduct of another from that portion of a third-party personal injury recovery which represents past medical expenses. The Medicaid lien in Ahlborn was $215,645.30. Ms. Ahlborn, seriously injured in an automobile accident, settled her case for $550,000. The parties stipulated that the full value of Ms. Ahlborn’s suit was at least $3,040,708.18, but was settled for a considerably diminished amount because of Ms. Ahlborn’s own culpable conduct.
Using a methodology, which some have now described as an “equitable allocation,” the Court in Ahlborn ruled that the state could only recover one sixth of the amount of its Medicaid lien because Ms. Ahlborn was legally limited to a recovery which represented one sixth of the true value of her case. Ahlborn holds that the portion of a settlement (or judgment) which represents damages in excess of past medical expenses is personal property of the plaintiff from which a Medicaid lien cannot be satisfied. To do so, said the Court, violates the anti-lien provisions of the Medicaid statute.
However, where, as here, the parties stipulated that the settlement requires that all Medicaid liens could be satisfied in full, such an agreement is not violative of Ahlborn. Just as importantly, plaintiffs counsel does not dispute that the settlement required plaintiff to satisfy all Medicaid liens nor does he contend that the settlement was for less than full value. Notwithstanding the clear and unambiguous terms of settlement stated in open court, plaintiffs counsel relies on Lugo to achieve a substantial reduction in the amount of the Medicaid liens owed to New York and Connecticut. Most respectfully, in the view of this court, Lugo takes Ahlborn to a place never intended.
Lugo was an obstetrical case which was settled for $3,500,000 in open court on February 15, 2006 (13 Misc 3d 681 [2006]). On “May 17, 2006 [at a] conference on plaintiffs’ proposed infant compromise order,” plaintiffs, relying on Ahlborn, sought a reduction of a $47,349.58 Medicaid lien (13 Misc 3d at 682). In a nutshell, plaintiffs in Lugo argued that the injuries suffered by the infant were not settled for full value, citing appellate authorities which sustained jury verdicts for injuries similar to those suffered by the Lugo infant for more than the settlement amount. While not agreeing with plaintiffs that an Ahlborn formulation could be employed or should be employed to reduce *838 the lien, the court in Lugo nonetheless held that “[a] court determination is necessary to confirm the full value of the case and the value of the various items of damages, including plaintiffs injuries and how they compare to verdicts awarded in other cases” (13 Misc 3d at 688-689). Despite my great admiration and respect for the Lugo court, I disagree that Ahlborn requires such a determination.
The only reason Ahlborn makes reference to the full value of Ms. Ahlborn’s claim is because there was a legal impediment, i.e., her own culpable conduct, which precluded her full recovery of damages. A similar circumstance would be a settlement for less than full value because of limited insurance coverage, i.e., the case is worth more than available insurance. Yet another example is the reduction of available cash in an obstetrical malpractice case because of the recently enacted Medical Indemnity Fund, which substitutes medical services for up-front cash. In other words, Ahlborn deals with the scenario of a settlement for less than full value because there is a legal or objective impediment to obtaining full value. In short, Medicaid takes a reduced amount because the plaintiff must take a reduced amount. However, Ahlborn does not permit a plaintiff to claim: “I settled my case for $3,000,000 but it’s really worth $10,000,000, now Medicaid must accept 30 cents on the dollar.” The value of injuries alone does not dictate the value of a case or settlement. The value of a case is determined by the strength of liability coupled with the nature of the injury. Rarely does one size fit all.
Unlike the plaintiff in Ahlborn who was asked to repay a lien of $215,645.30 from a $550,000 recovery (39% of the recovery), plaintiff in Lugo was asked to repay $47,349.58 from $3,500,000 (a little more than 1%). It is hard to imagine that Ahlborn stands for the proposition that one who becomes a millionaire as the consequence of a malpractice settlement should be absolved, in whole or in part, from repaying a modest Medicaid lien and shortchanging the citizenry from an appropriate recoupment of taxpayer dollars.
Lastly, Ahlborn should not be used as a device to collaterally attack the reasonableness of an infant’s settlement where a court has already signed an infant’s compromise order approving the settlement. In short, if plaintiffs counsel believed that the settlement offer was inadequate, he should not have settled the case.