(October 10, 2017)

■ D.J. et al., Appellants, v 636 HOLDING CORP. et al., Defendants. DEPARTMENT OF SOCIAL SERVICES, Nonparty Respondent. [62 NYS3d 326]—

Order, Supreme Court, Bronx County (Barry Salman, J.), entered December 29, 2015, which denied plaintiffs' motion to vacate a Medicaid lien or, in the alternative, to reduce the lien amount by the same proportion by which the full value of the

case was compromised, and thereby allowed the Department of Social Services of the City of New York (DSS) to recover the full amount of the Medicaid lien, unanimously affirmed, without costs.

D.J. (plaintiff), then age 16, was shot by an intruder at defendants' premises and rendered a paraplegic. After his family's insurance coverage was exhausted, his medical care was paid by Medicaid for nine years.

The minor plaintiff and his mother sued the owners of the apartment complex for negligently failing to maintain the premises in reasonably safe condition, and nonparty DSS filed a lien pursuant to Social Services Law § 104-b for recovery of its past medical expenses on plaintiff's behalf totaling $250,070. Although plaintiffs' counsel had been served with notice of the lien on April 23, 2010, during the pendency of the action, and was informed by DSS to notify DSS of any pending settlement discussions or face a subrogation action, counsel neither informed DSS of its ongoing negotiations with defendants nor sought to negotiate the lien amount with DSS.

In May 2010, plaintiffs, then claiming damages in the amount of $25,000,000,* settled the premises liability action with the defendant landlords for $4,350,000. After unsuccessful efforts between plaintiffs and DSS to resolve the lien, plaintiffs moved in December 2010 to vacate the lien entirely, contending, without supporting documentation, that the entire settlement was ascribed to plaintiff's pain and suffering, and no portion of it was attributable to payment of past medical expenses. In the alternative, plaintiffs sought to reduce the amount of the Medicaid lien to the same proportion of the settlement as the settlement bore to the $25,000,000 damages plaintiffs claimed during settlement discussions, which they characterized as constituting the true value of the case. Plaintiffs' counsel averred that "[t]he low settlement value reflects the potential for a defense verdict in this premises liability case."

DSS sought to enforce the full amount of its lien for medical expenses, based in part upon plaintiffs' failure to allow them to participate in the settlement negotiations. DSS also argued that the settlement amount constituted the full value of the case, in view of plaintiffs' concession that negligent security cases are difficult to prove. The agency further contended that public policy prohibited parties to a personal injury suit from avoiding Medicaid liens by allocating a settlement entirely to

---

* In the complaint, plaintiff sought damages in the amount of $50,000,000 which included the expenses he "was caused . . . to incur . . . for medical care and attention."

pain and suffering, and noted plaintiffs' failure to provide the stipulation of settlement or any other proof of the parties' allocation of damages in determining the amount of the settlement.

On or about June 30, 2011, Supreme Court ordered a hearing to determine the full value of the case and the value of the various items of damages, and ordered related discovery. By October 2014, however, the parties had waived a hearing, agreeing to have the matter decided on the papers submitted.

In a December 17, 2015 decision and order on plaintiffs' motion, Supreme Court determined DSS to be entitled under Social Services Law § 104-b to enforce its full lien amount of $250,070, rejecting plaintiffs' requests for relief. In doing so, the court found that the settlement amount represented the actual value of the plaintiff's case; that DSS was not a party to the settlement, and that DSS had notified the plaintiffs and their counsel prior to the settlement of the existence of the lien. The motion court further found that plaintiffs had attempted to allocate the entire settlement amount to conscious pain and suffering, thereby unlawfully depriving DSS of any ability to enforce its Medicaid lien against the settlement. The court further noted that the DSS lien amounted to 5.79% of the plaintiff's overall settlement. The motion court thus effectively denied plaintiffs' motion to vacate the lien or, in the alternative, a reduction of the lien amount in proportion to the relation the settlement amount bore to plaintiff's claimed full value of the case (*see Arkansas Dept. of Health & Human Servs. v Ahlborn*, 547 US 268 [2006]; *see also Harris v City of New York*, 16 Misc 3d 674 [Sup Ct, NY County 2007, Feinman, J.]; *Lugo v Beth Israel Med. Ctr.*, 13 Misc 3d 681 [Sup Ct, NY County 2006, Schlesinger, J.]).

On this appeal, the parties disagree as to the proper application of *Ahlborn* and its progeny in the present circumstances. On the record presented, we find that Supreme Court properly awarded DSS the full amount of its lien and properly declined to employ the formula used in *Ahlborn*.

Federal law provides that under Medicaid, the jointly funded federal and state medical assistance program for low income individuals, agencies which serve as its local administrators, such as DSS here, must comply with all federal requirements of the program or risk losing their federal funding (*see Ahlborn*, 547 US at 275-276). Among such requirements is the obligation of the state or local agency administering the program to "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the

plan" and to seek reimbursement from them for such services "to the extent of such legal liability" (42 USC § 1396a [a] [25] [A], [B]). In furtherance of these requirements, Medicaid recipients are required to assign their rights to claims against third parties as a condition to their eligibility to receive program benefits (42 USC § 1396k [a] [1] [A]; Social Services Law § 366 [1] [d] [2]), and the Medicaid lien created in such circumstances enables the program to remain "the payer of last resort" (*Cricchio v Pennisi*, 90 NY2d 296, 309 [1997]).

Federal law requires the state or local agency to recoup Medicaid funds from the responsible third parties and set up procedures for doing so (*Cricchio* at 305). DSS is authorized to impose a lien in a personal injury action against a third party who is legally liable for the Medicaid recipient's injury (Social Services Law § 104-b; *Calvanese v Calvanese*, 93 NY2d 111, 117 [1999]), and is subrogated to the Medicaid recipient's right to reimbursement from the liable third party (Social Services Law § 367-a [2] [b]).

DSS is entitled to recover reimbursement only for the amount of medical expenses it paid, and not for other damages amounts, such as pain and suffering or lost wages (*Wos v E. M. A.*, 568 US 627, 638 [2013]; *Ahlborn* at 280-282). The Supreme Court has recognized, however, "that Medicaid beneficiaries and tortfeasors might collaborate to allocate an artificially low portion of a settlement to medical expenses" (*Wos* at 634), to manipulate the settlement to "allocate away the State's interest" (*Ahlborn* at 288).

The Supreme Court had no occasion in *Ahlborn* to prescribe any particular method for determining the portion of a personal injury settlement attributable to medical care, as there the parties, including the state, stipulated that 6% of the settlement would be ascribed to past medical expenses. Although the Supreme Court in *Ahlborn* found the formula advanced by the plaintiff in that case (and urged by plaintiffs here), of applying the agreed proportion that medical expenses bore to the full value of the case to the amount of the settlement, to be an acceptable method of allocation, it did not adopt it as the exclusive method of making the determination. Indeed, in *Wos*, the Court rejected any "one-size-fits-all" approach to making the calculation (*Wos* at 639). Rather, in *Ahlborn* and later in *Wos*, the Court merely made clear that where the amount of a lump sum settlement attributable to medical expenses was not established by a verdict or by a stipulation binding on all parties, a judicial resolution of the issue was required (*Wos* at 638; *Ahlborn* at 288).

In New York, it has long been recognized that a Medicaid lien will not be defeated by the mere declaration of a plaintiff's attorney that the settlement does not relate to medical expenses (*Matter of Homan v County of Cattaraugus Dept. of Social Servs.*, 74 AD3d 1754, 1755 [4th Dept 2010]; *Carpenter v Saltone Corp.*, 276 AD2d 202, 211 [2d Dept 2000]; *Simmons v Aiken*, 100 AD2d 769, 770 [1st Dept 1984]). As we have explained, the court's determination "is not foreclosed by the form of the settlement documents or the language used by the attorneys in the settlement stipulation, if that form and language do not truly reflect the consideration of the settlement, or are chosen merely as a means to defeat DSS' recovery" (*Simmons* at 770). Among the factors we found relevant to the court's determination was whether the pleadings asserted a claim for medical expenses (*id.*).

In this case, after the parties declined the opportunity for a hearing, the motion court properly considered all of the surrounding facts and circumstances in making its determination of the portion of plaintiffs' $4.3 million settlement attributable to the medical expenses paid by Medicaid. Plaintiffs never proffered any breakdown of the settlement amount, nor disclosed its terms. Rather, plaintiffs characterized the entire payment as attributable to plaintiff's pain and suffering, notwithstanding the fact that in their complaint, plaintiffs had sought recompense for the medical care and attention he had incurred. The motion court reasonably rejected this characterization as an effort to deprive DSS of its Medicaid lien.

Further, plaintiffs had ignored the request by DSS that it be permitted to participate in settlement discussions. As noted, although the court ordered a hearing on the *Ahlborn* issue, plaintiffs waived their right to it. And the court noted that the Medicaid lien, representing $250,070 paid over nine years, constituted less than 6% of the total settlement and thus did not unduly prejudice plaintiff's recovery.

Under these circumstances, the motion court fairly determined that DSS was entitled to recoupment of its entire lien.

Plaintiffs' reliance on *Lopez v Daimler Chrysler Corp.* (179 Cal App 4th 1373, 102 Cal Rptr 3d 285 [2009]), is misplaced. Social Services Law § 104-b differs in its requirements from its counterpart California statute. In any case, in *Lopez*, the parties disagreed as to the amount of the lien and the state agency had failed to submit any evidence in support of its claim. Here, by contrast, plaintiffs conceded the amount of the expenditures DSS made under Medicaid for plaintiff's past medical expenses. Neither does *Miraglia v H & L Holding Corp.* (36 AD3d

456 [1st Dept 2007]), help plaintiffs here, given its disparate facts.

Finally, plaintiffs failed to preserve any argument as to proper notice of the lien, not having raised it below, so it cannot be considered by this Court. If we were to consider it, we would reject it, as any failure to adhere to the statutory notice requirements for the lien would not void the lien, even under prior law. In any case, plaintiffs received sufficient notice in the April 23, 2010 letter to enable them to identify the injured party and the occurrence on which the claim was based for purposes of Social Services Law § 104-b. Concur—Sweeny, J.P., Richter, Andrias and Kahn, JJ.