JOY COSSICH LOBRANO, Judge.
I defendant, the Board of Supervisors for Louisiana State University Agricultural and Mechanical College through the *894 Health Care Services División (“LSU”), appeals the July 21, 2014 trial court judgment issued pursuant to a writ of mandamus filed by plaintiff, Hiram Armstrong. This writ of mandamus was filed by plaintiff for the reduction and determination of the amount of money to be paid to LSU (which formerly operated the Interim LSU Public Hospital) and to University Medical Center Management Company d/b/a Interim Louisiana Hospital (“University”) pursuant to their liens and privileges filed under La. R.S. 9:4752 for reimbursement of medical expenses paid for plaintiffs care related to his February 22, 2013 accident.
On June 14, 2013, plaintiff filed a petition for damages as a result of a February 22, 2013 accident, which occurred when plaintiff was riding a bicycle on D’Abadie Street in New Orleans and was struck by a vehicle driven by Simon Metzner. Plaintiff named Metzner as a defendant, along with Metzner’s insurer, State Farm Mutual Automobile Insurance Company, and plaintiffs 12uninsured/underinsured motorist coverage insurer, Progressive Security Insurance Company.
On May 20, 2014, plaintiff filed a petition for writ of mandamus against the State of Louisiana, through the Department of Health and Hospitals (“DHH”). Plaintiff attached to his petition a letter dated February 5, 2014 to him from LSU and University, formally notifying him of their liens and privileges under the provisions of La. R.S. 9:4752 et seq., against the proceeds of any recovery by plaintiff for personal injuries suffered in the accident. These privileges were asserted to recoup payment for medical services rendered to plaintiff. Plaintiff alleged that he has compromised and settled his claims against Metzner’s insurer, State Farm, and his uninsured/underinsured motorist earner, Progressive, and those defendants have issued checks for payment of plaintiffs claim, with the checks being made payable to plaintiff, his attorney and Interim LSU Public Hospital. Settlement documents have been executed by plaintiff, and pleadings required to dismiss and terminate this lawsuit have been completed. However, according to plaintiff, the delay and inaction of DHH has halted any progression of the settlement process.
By letters dated February 18, 2014 and March 12, 2014, plaintiff asked DHH[1] for its assistance in reducing the liens to an acceptable amount that plaintiff could pay. However, as of the date the petition for writ of mandamus was filed, plaintiff received no response from DHH. Plaintiff alleged that other attempts to |sget information from DHH have also been unsuccessful. Plaintiff further alleged that he returned the checks issued by the insurers based on his concern that the checks would become “stale” due to his inability to satisfy the liens and privileges of DHH.
Plaintiff alleged that he is aggrieved by the delay and inaction of DHH, and asked the trial court to order DHH to provide him with information regarding the dollar amount required to pay and satisfy the liens and privileges within a certain period of time, or, in the alternative, that the court order DHH to appear and show cause why the liens and privileges should not be dissolved. After plaintiffs petition for writ of mandamus was filed, the trial court issued an order on May 20, 2014, ordering DHH to provide plaintiff with information regarding the dollar amount of money required to pay and satisfy the liens and privileges in these proceedings by the close of business on June 3, 2014.
*895 On May 30, 2014, plaintiff amended his petition for writ of mandamus, alleging that after the filing of his original petition for writ of mandamus, the LSU Health Care Services Division sent plaintiff a letter, stating $28,900.00 as the total dollar amount of the liens and privileges owed for services rendered by LSU and University. Plaintiff alleged that this amount varies greatly from the guidelines for negotiating a Medicaid lien as established by the United States Supreme Court in Arkansas Dept. of Health and Human Services v, Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). Plaintiff contended that the offer of settlement of the total lien amount stated by LSU is at such great variance with the guidelines of |4the Ahl-bom case that it is tantamount to being in defiance of the trial court’s May 20, 2014 order, and in defiance of the guidelines established in the Ahlbom case. Plaintiff asked the trial court to fix the dollar amount of the liens and privileges, because of LSU’s alleged unwillingness to do so within the guidelines established by the United States Supreme Court in the Ahl-bom case.
On June 27, 2014, LSU and University filed an answer to plaintiff’s original and amended petitions for writ of mandamus, alleging that they are the proper defendants in this matter, and not DHH. They further alleged that they presented initial offers of lien reduction to plaintiffs counsel on May 12, 2014, not on May 29, 2014 as alleged by plaintiff. They also alleged that the liens at issue are not Medicaid liens; rather, they are healthcare provider liens, so the Ahlbom case cited by plaintiff is not applicable.
The answer alleged that between February 22, 2013 and May 31, 2013, the Interim LSU Public Hospital, the former public medical facility that was managed by LSU Health Care Services Division (LSU) through June 23, 2013, provided medical treatment to plaintiff in the amount of $51,801.66, which is still due and owing. Between July 26, 2013 and January 24, 2014, the University Medical Center Management Company d/b/a the Interim Louisiana Hospital (University), the private medical facility that took over the operations of the Interim LSU Public Hospital on June 24, 2013, provided medical treatment to plaintiff in the amount of $6,912.73, which is still due and owing. On February 5, 2014, both LSU and University issued to plaintiff formal notices of their liens and privileges, pursuant | Bto La. R.S. 9:4752, et seq., for these outstanding charges. Letters sent to plaintiff dated May 12, 2014 show that LSU offered to reduce its lien amount to $25,900.00 for full payment, and University offered to reduce its lien amount to $3,000.00 for full payment.
DHH also filed an answer to the original and amended petitions for writ of mandamus, stating that it has not paid any medical expenses related to injuries sustained by plaintiff in the February 22, 2013 accident. Accordingly, DHH confirmed that it is not due any reimbursement from settlement funds received by plaintiff.
Following a hearing, the trial court issued a judgment on July 21, 2014, stating that she was following the guidelines for deciding reductions in medical liens for Medicaid reimbursement as set forth in Arkansas Dept. of Health and Human Services, et al. v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). The trial court found the following facts:
(1) The amount of the lien and privilege under La. R.S. 9:4752 is $51,801.66 for LSU and $6,912.73 for University, or a total of $58,714.39;
(2) The available settlement amount from State Farm and Progressive *896 respectively is $45,000.00 and $10,500.00, or a total of $55,500.00;
(3) The reasonable value of the plaintiffs injuries is $300,000.00;
(4) The ratio of total liens ($58,714.39) to the reasonable value ($300,000.00) is 5.11;
1⅜(5) The net amount available for liens after deduction of attorney’s fees and costs is $28,760.35;[2] and
(6) The ratio of medical liens to reasonable value (5.11) divided by the available net settlement ($28,760.35) is $5,628.25 total with pro rata share being 87% for LSU and 13% for University, or $4,896,57 and $731.67 respectively.
Based on these factual findings, the tidal court rendered judgment reducing the lien of LSU from $51,801.66 to $4,896.57, and reducing the lien of University from $6,912.73 to $731.67. LSU now appeals the July 21, 2014 trial court judgment.
On appeal, LSU argues that the trial court erred by distinguishing the amount of recovery that can be recovered by a public health care provider versus a private one for liens perfected pursuant to La. R.S. 9:4752 et seq, LSU also argues that the trial court erred by applying the Ahlborn formula, which is used to determine the reduction of Medicaid lien reimbursements owed to DHH, in its determination of the amounts owed to LSU as a result of its health care provider liens that were properly perfected pursuant to La. R.S. 9:4752 et seq.
La. R.S. 9:4752 states as follows:
A health care provider, hospital, or ambulance service that furnishes services or supplies to any injured person shall have a privilege for the reasonable charges or fees of such health care provider, hospital, or ambulance service on the net amount payable to the injured person, his heirs, or legal representatives, out of the total amount of any recovery or sum had, collected, or to be collected, whether by judgment or by settlement or compromise, from another person on account of such injuries, and on the net amount payable by any insurance company under |7any contract providing for indemnity or compensation to the injured person. The privilege of an attorney shall have precedence over the privilege created under this Section.
The record shows that the lien from LSU represents treatment received by plaintiff when the hospital where he was treated was a public facility, and the lien from University represents treatment received by plaintiff after the hospital became a privately-run facility. LSU argues that when the trial court made its determination as to the proper distribution of settlement funds between plaintiff and LSU, the public health care provider, the court erroneously followed guidelines established for reducing Medicaid liens owed to DHH for health care benefits that DHH had previously extended to injured persons. LSU further argues that La. R.S. 9:4752 does not limit its application to only private health care providers, or include a formula for determining how much should be allotted to the health care provider and the injured person. Nonetheless, the trial court chose to apply Medicaid lien guidelines to determine the proper distribution to the public health care provider, LSU. In doing so, the trial court stated at the hearing that she believed it was unfair for a *897 health care provider to get all of the money from a plaintiffs settlement, with the plaintiff getting nothing.
LSU cites the case of Marquez v. Progressive Ins. Co., 06-1024 (La.App. 3 Cir. 12/6/06), 944 So.2d 876, in which a plaintiff received no amount from settlement funds after disbursements were made for attorney’s fees, court costs and medical services that were the subject of a health care provider lien perfected under La. R.S. 9:4752. The Marquez eourt cited the case of Moore v. State, La. State Univ. Med. Ctr., 596 So.2d 293 (La.App. 3 Cir.1992), which held that LSU |sMedical Center at Shreveport was entitled to recover the full amount of its lien because plaintiff was a debtor of the hospital, stating:
The clear language of La. R.S. 9:4752 states that the hospital shall have a privilege for the reasonable charges or fees on the net amount payable to the injured person out of the total amount of recovery, whether by judgment or settlement. ... The statute also clearly gives precedence to the privilege of an attorney over that of the hospital. Under this statute, it is clear that the attorney’s privilege would be satisfied first and the hospital’s privilege should be satisfied next out of the net amount payable to [plaintiff],
Marquez, 06-1024, p. 7, 944 So.2d at 881.
The Marquez court, following the reasoning in the Moore case, found that the trial court did not err in ordering disbursement of the insurance proceeds in accordance with La. R.S. 9:4752.
Plaintiff argues that the trial court was correct in finding that the enforcement of La. R.S. 9:4752 in this case would be unreasonable and fundamentally unfair, and that the formula used in cases involving Medicaid liens offered a more fair solution. But the flaw in that solution is that the liens at issue in this case are not Medicaid liens; they are health care provider liens, which are controlled by the provisions of La. R.S. 9:4752. Because of that fact, the trial court erred in applying Medicaid lien guidelines to determine the amount of funds owed to LSU out of plaintiffs settlement proceeds.[3]
InFor the reasons stated above, the July 21, 2014 trial court judgment is hereby reversed, and this matter is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED
LOVE, J., concurs and assigns reasons.
BONIN, J., concurs with reasons.
McKAY, C.J., dissents for the reasons assigned by Judge BAGNERIS.
BAGNERIS, J., dissents with reasons.

. The letters attached to the petition were addressed to LSU Health System, but plaintiff states in his petition that his request for a dollar amount of the liens was made to DHH.

. The figure stated in the fifth factual finding, $28,750.35, was a typographical error. The amount of the settlement, $55,500.00, minus the amount of attorney’s fees and costs submitted (and apparently accepted by the trial court) by plaintiff, $26,739.65, equals $28,760.35. The $28,760.35 figure was used by the trial court in the sixth factual finding.

. Also, there is no evidence in the record that the reasonable value of plaintiff’s injuries is $300,000,00, as stated by the trial court in its finding of facts. The trial court apparently accepted this estimation of the value of plaintiff’s injuries as stated by plaintiffs counsel at the hearing, with no further evidentiary support.