974 So.2d 548 (2008)
BILL SALTER ADVERTISING, INC., Appellant,
v.
DEPARTMENT OF TRANSPORTATION, Appellee.
No. 1D07-2599.
District Court of Appeal of Florida, First District.
February 13, 2008.
*549 Roy V. Andrews and Laura Joyner Nye of Lindsay, Andrews & Leonard, Milton, for Appellant.
Susan Schwartz and Gregory G. Costas, Department of Transportation, Tallahassee, for Appellee.
VAN NORTWICK, J.
Bill Salter Advertising, Inc., appeals a final order of the Florida Department of Transportation (DOT) revoking a sign permit for Salter's nonconforming sign[1] on the grounds that the sign was "destroyed" during Hurricane Dennis in July 2005. Because competent substantial evidence in the record supports the findings of fact of the DOT, we affirm.
Under rule 14-40.007(6), Florida Administrative Code, "[a] nonconforming sign may continue to exist so long as it is not destroyed, abandoned, or discontinued . . ." "Destroyed" was defined by the rule as it existed at the time of the controversy and as applicable here,[2] in pertinent part, as follows:
(a) "Destroyed" means more than 50 percent of the upright supports of a sign structure are physically damaged such that normal repair practices of the industry would call for, in the case of wooden sign structures, replacement of the broken supports and, in the case of a metal sign structure, replacement of at least 25 percent of the length above ground of each broken, bent, or twisted support. A sign will not be considered "destroyed" within the meaning of this section under the following conditions:
1. The destruction of a sign caused by vandalism or other criminal or tortious act.
2. If the permitee demonstrates that the replacement materials costs to reerect the sign would not exceed 50 percent of the value of the structural materials in the sign, immediately prior to destruction. . . .
The record reflects that prior to Hurricane Dennis the sign had five ground supports, 10 vertical supports (plywood), and stringers composed of 30 pieces of 10 by 6 by 12 foot lumber. Based on its examination of the sign after the hurricane and before and after repairs to the sign, the DOT concluded that the cost of the replacement materials exceeded 50 percent of the value of the sign and that, therefore, the sign had been "destroyed" under its rule. The DOT issued a notice of intent to revoke the permit for the sign and Salter requested an administrative hearing pursuant to section 120.57(1), Florida Statutes (2005).
At the administrative hearing, Salter's witnesses testified that the cost of the structural materials for the subject sign immediately prior to the hurricane was $945; that the sign was repaired using existing materials, three new poles and two new sheets of plywood; and that the *550 cost of new materials was $335, or 35 percent of the $945 value. Based upon observations of, and the photographs by, a DOT employee who had visited the site of the sign before and after the repairs, DOT witnesses testified that, with the exception of one pole, all new materials were used to replace the damaged sign. Based on the fact that virtually all new materials were used, the DOT asserted that the cost of replacement materials exceeded 50 percent of the value of the sign.
In the recommended order, the ALJ rejected Salter's contention that only three new poles and two new sheets of plywood were used in the repair. The ALJ expressly found:
This testimony and evidence [relating to the use of only three new poles and two new sheets of plywood] is not accepted as credible. The photographs in evidence in the Respondent's exhibits clearly show five new poles being added to the sign or a total replacement of the poles supporting the sign vertically. Instead of two new sheets of plywood, the photographs clearly show considerably more than that amount of new plywood added to the sign . . .
Moreover, the photographs in evidence show clearly that the stringers that were used in the repair work were all new pressure-treated materials. They clearly are new materials in appearance and are not existing materials which would exhibit weathering. Thus, the 35 percent re-build cost in structural material value versus the $945.00 dollar value of all components of the sign, immediately prior to the storm, is not deemed credible nor is the figure of $335.00 in purported re-build cost.
* * *
Based upon the testimony of the Department's witnesses, and particularly the evidence embodied in the photographs in the Respondent's evidence, the new materials included in the sign substantially exceed those stated in . . . testimony [of Salter's witness] and in . . . [Salter's] evidence. . . . It is therefore determined that more than 50 percent of the value of the structural materials in the sign, immediately prior to destruction, was replaced with new materials. Thus, those materials would exceed 50 percent of the value of the structural materials in the sign as they existed immediately prior to destruction. . . .
The ALJ recommended that a final order be entered revoking the sign permit. After considering the exceptions to the recommended order filed by Salter, DOT agreed that the ALJ had mistakenly stated that five new poles were added when the evidence showed "that no more than four (4) new poles were added." In all other respects, DOT accepted the ALJ's findings of fact, adopted the conclusions of law, and ordered that the sign permit be revoked.
On appeal, Salter argues that the findings of fact are not supported by competent substantial evidence. Salter asserts that under Wayfara, Inc. v. Fla. Dep't of Transp., 370 So.2d 858 (Fla. 1st DCA 1979), the photographs utilized by DOT here cannot constitute competent substantial evidence. We do not agree. Even if Wayfara can be read to stand for the proposition that photographic evidence cannot constitute competent substantial evidence, an issue we do not reach, here the testimony of the DOT witness who examined the sign before and after the repair certainly does constitute such evidence. Without a doubt, the evidence before the ALJ was in conflict. As the trier of fact, however, the ALJ considered the credibility of the witness and expressly rejected the testimony of Salter's witnesses as incredible.
Competent, substantial evidence is "`such evidence as will establish a substantial *551 basis of fact from which the fact at issue can be reasonably inferred' or such evidence as is `sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached.'" Heifetz v. Dep't of Bus. Regulation, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985) (quoting De Groot v. Sheffield, 95 So.2d 912, 916 (Fla.1957)). In reviewing the record, neither the agency nor this court is permitted to re-weigh the evidence presented, judge the credibility of the witnesses, or otherwise interpret the evidence to fit a desired ultimate conclusion. See Rogers v. Dep't of Health, 920 So.2d 27, 30 (Fla. 1st DCA 2005). While Salter maintains that its evidence should have been accepted, the ALJ, who had the benefit of observing the witnesses' demeanor firsthand, determined that Salter's evidence was not credible.
AFFIRMED.
ALLEN and LEWIS, JJ., concur.
NOTES
[1] Pursuant to section 479.01(14), Florida Statutes (2005), a "nonconforming sign" is defined as "a sign which was lawfully erected but which does not comply with the land use, setback, size, spacing, and lighting provisions of state or local law, rule, regulation, or ordinance passed at a later date or a sign which was lawfully erected but which later fails to comply with state or local law, rule, regulation, or ordinance due to changed conditions."
[2] Rule 14-10.007(6), Florida Administrative Code, was amended in 2007. The amended rule, among other things, increases the threshold for defining "destroyed" to more than 60 percent of the upright supports and deletes the exceptions in subsection (c)(a)2.