# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-1852

_____

BRANDON L. EADY,

 Appellant,

 v.

STATE OF FLORIDA, AGENCY FOR
HEALTH CARE ADMINISTRATION,

 Appellee.

_____

On appeal from a Final Order of the Agency for Health Care
Administration.
Lynne A. Quimby-Pennock, Administrative Law Judge.

September 12, 2019

JAY, J.

In *Arkansas Department of Health & Human Services v.
Ahlborn*, 547 U.S. 268 (2006), the United States Supreme Court
ruled that the federal Medicaid Act's anti-lien provision preempts
a State's effort to take any portion of a Medicaid recipient's tort
judgment or settlement not "designated as payments for medical
care." *Id.* at 284. What the Supreme Court in *Ahlborn* did not have
occasion to answer, however, was "how to determine what portion
of a settlement represents payment for medical care." *Wos v.
E.M.A.*, 568 U.S. 627, 634 (2013). Instead, the Court "anticipated
that a judicial or administrative proceeding" would resolve the
dispute. *Id.* at 638-39. In Florida, section 409.910(17)(b), Florida

Statutes (2016)[1], permits a Medicaid recipient to file a petition under chapter 120, Florida Statutes, with the Division of Administrative Hearings ("DOAH") to prove "that Medicaid provided a lesser amount of medical assistance than that asserted by" the Agency for Health Care Administration. § 409.910(17)(b), Fla. Stat. The question expressly presented by this appeal is whether the evidence adduced by the Medicaid recipient constituted competent, substantial evidence sufficient to carry his burden of proof.

## BACKGROUND

On July 6, 2011, Appellant, Brandon Eady, suffered a catastrophic injury to his spinal cord when the car in which he was a passenger swerved to avoid hitting an animal, rolled, and ended upside down in a ditch less than forty yards from his home. The accident rendered him an incomplete quadriplegic—meaning, he is profoundly impaired with very limited use of his arms and hands. Florida's Medicaid program paid $177,747.91 for Appellant's medical care.

Appellant brought a personal injury action against the driver of the car, the owner of the car, and the insurance carrier that provided uninsured/underinsured motorist insurance coverage. The Agency for Health Care Administration ("AHCA") was notified of the action and, in turn, notified Appellant's attorney that it had filed a preliminary lien of $177,747.91 against any damages Appellant might recover from the third-party tortfeasors. Appellant later entered into a series of confidential settlement agreements with the defendants totaling $1,000,000. AHCA did not participate in the settlement negotiations. Appellant's grave condition and his need for a life-care plan was not in dispute.

Appellant filed with DOAH a "Petition to Determine Amount Payable to Agency for Health Care Administration in Satisfaction

---

[1] All references to section 409.910 will be to the 2016 version, the version in effect when the settlement was executed. *Suarez v. Port Charlotte HMA*, 171 So. 3d 740 (Fla. 2d DCA 2015). Moreover, the parties stipulated at the hearing that the 2016 version of the statute controlled.

of Medicaid Lien." He and AHCA filed a Joint Pre-hearing Stipulation with the administrative law judge ("ALJ") in which they agreed that Appellant's burden of proof would not be the "clear and convincing evidence" standard in section 409.910(17)(b), but the default, lesser standard of proof of a "preponderance of the evidence" found in section 120.57(1)(j), Florida Statutes—an unmistakable nod to the decision in *Gallardo v. Dudek*, 263 F. Supp. 3d 1247 (N.D. Fla. 2017).[2] The final hearing occurred in Tallahassee on January 4, 2018, through a videoconference call from Tampa where Appellant and one of his witnesses reside.

At the hearing, Appellant's counsel called two attorneys as witnesses, each of whom was accepted as an expert in the valuation of damages. The first witness to testify was Ralph M. Guito, III. Mr. Guito is Appellant's stepfather. He also assisted in representing Appellant in each of the settlement negotiations. Mr. Guito came to the hearing with twenty-nine years of experience as a member of the Florida Bar, and testified to having practiced primarily in the areas of medical malpractice, personal injury, and catastrophic injury cases. He had experience representing individuals who suffered spinal cord injuries "on numerous occasions." In addition to representing his own clients, Mr. Guito felt it was important to stay abreast of the types of damages other juries were awarding, particularly in catastrophic injury cases. As a routine part of his practice, Mr. Guito would make assessments of the overall damages suffered by his clients, oftentimes hiring experts to make those evaluations, followed by round-table discussions of damages with the other attorneys in his firm.

---

[2] In *Gallardo*, the federal district court ruled that Florida's Medicaid reimbursement statute's "clear and convincing burden—when coupled with a formula-based baseline wholly divorced from reality and a requirement that the recipient affirmatively disprove that baseline to successfully rebut it—is in direct conflict with the Medicaid statute's anti-lien and anti-recovery provisions," and is, therefore, "preempted by federal law." 263 F. Supp. 3d at 1260. AHCA has appealed that ruling. *Gallardo v. Mayhew*, No. 17-13693 (11th Cir. Aug. 17, 2017).

In the course of his assisting in the representation of Appellant, Mr. Guito reviewed Appellant's extensive medical records and considered how Appellant's treatment would project into the future as part of a life care plan. He explained that, as a result of the accident, Appellant suffers from "quadriparesis," which means he is not a complete quadriplegic, but has very limited movement in his arms and limited use of his hands. His prognosis is poor and as he ages, he will become completely dependent on a caregiver.

Mr. Guito acknowledged that Appellant's past medical expenses approximated $177,000, but he emphasized that Appellant also would have been entitled to recover damages for future medical expenses, future pain and suffering, future loss of enjoyment of life, future lost wages, and mental anguish—all reasonable elements of a potential jury verdict. Based on his training and experience, as well as his knowledge of Appellant's medical condition and the life care plan prepared for him, Mr. Guito "conservatively" projected the value of Appellant's damages to be in excess of $15,000,000, "just looking at the future medical expenses and the economic damages associated with his life care plan." The life care plan itself, however, did not include dollar figures or a final dollar amount.

As for non-economic damages, Mr. Guito explained: "[T]hose are harder to quantify, obviously, because we don't have a calculator to determine how this has effected [sic] somebody's life, and how you can compensate them for all of the losses of being able to walk down a beach or walk up a flight of stairs, or play with your child." (Appellant has a daughter who was then six years old.) He referred to the non-economic damages as "subjective," but appointed them an estimated value of $25 to $40 million.

Based on his conservative valuation of Appellant's damages at $15,000,000—and over AHCA's objection that he had not been accepted as an expert on allocation of damages—Mr. Guito was permitted to testify as to his calculation that the $1,000,000 settlement represented approximately 6.66% of the value of Appellant's total estimated damages. Applying that same percentage difference to the $177,747.91 in past medical expenses claimed by AHCA, Mr. Guito testified that $11,838 would be a

4

reasonable allocation of the confidential settlement agreement for past medical expenses. In other words, the $11,838 represented a pro rata share of the million dollar settlement.

AHCA's attorney conducted what can only be described as a tepid cross-examination of Mr. Guito that lasted only a matter of moments. It did nothing to impeach Mr. Guito's testimony on valuation or allocation; neither did it impugn Mr. Guito's credentials and experience.

Appellant's next witness was attorney R. Vinson Barrett, a forty-two-year member of the Florida Bar whose practice had dealt almost exclusively with personal injury litigation representing plaintiffs who had suffered catastrophic and spinal cord injuries. Mr. Barrett had reviewed Appellant's files for purposes of testifying at the hearing. He concluded that Appellant's "pure damages" were conservatively placed at $15,000,000, but he would have "place[d] the case at a minimum . . . of 25 or 35 million dollars." Mr. Barrett "paid most attention" to the life care plan, opining that in his experience, life care plans for quadriplegics are "above 10 million dollars," while noting that Appellant was "not the worst quadriplegic" he had seen. It was a routine part of his practice to assess the value of damages suffered by a client, and he was familiar with both jury verdicts and settling cases, although he testified that the great majority of his cases settled at some point in the process. Based on his knowledge of Appellant's medical records and the extent of his injuries, Mr. Barrett was of the opinion that an estimated $15,000,000 in damages was "extremely conservative." He would have placed the case "at a minimum . . . of $25 or $30 million dollars," but was willing to accept the more conservative amount for purposes of valuation.

Again, over AHCA's objection, the ALJ allowed Mr. Barrett to testify that the $1,000,000 settlement fairly represented 6.66% of the estimated $15,000,000 recovery. Mr. Barrett also agreed that if Appellant recovered only 6.66% of the full value of his case, that same percentage should be allocated to past medical expenses recoverable by AHCA. Furthermore, he added that applying that ratio was not only reasonable, but was common practice in the legal proceedings with which he historically had been associated. Again, Mr. Barrett approved of the notion that applying a pro rata

formula to the settlement amount would result in $11,838 allocated to past medical expenses.

As before with Mr. Guito, AHCA's half-hearted cross-examination of Mr. Barrett did nothing to impeach his opinions. For its part, AHCA did not put on any evidence at the hearing regarding the fairness or reasonableness of the 6.66% allocation of the settlement for Appellant's past medical expenses.

## THE FINAL ORDER

In her final order, the ALJ dismissed Messrs. Guito and Barrett's testimony, finding that they "spoke in generalities, speculations, and reasonableness as to the settlement in relation to the Medicaid lien." Consequently, she concluded that Appellant "did not prove, by a preponderance of the evidence, that a lesser portion of the total recovery should be allocated as reimbursement for past medical expenses." Important to our analysis, the ALJ found:

> 39. To be clear, section 409.910(17)(b) clearly affords Petitioner a procedure for establishing that the amount of AHCA's lien should be reduced from the full amount claimed so that it would not be paid from portions of the settlement recovery other than the portion allocated to past medical expenses (applying the gloss to account for the federal decisions), contrary to the federal Medicaid anti-lien law and the federal decisions interpreting it. . . . Neither the statutes nor the courts have provided clear guidance on how to determine the proper allocation. *However, the lack of certain information, shielded from the undersigned via the confidential settlements, thwarts Petitioner's position and his ability to prove via the preponderance of evidence standard that the lesser amount is warranted.*

> . . . .

> 41. Petitioner has demonstrated by a preponderance of the evidence that he recovered $1,000,000 pursuant to the confidential settlement agreement. However, Petitioner failed to prove by a preponderance of the

6

evidence *that those settlement agreements provided that the recovery represented 6.66 percent of his total past medical expenses, or that he should reimburse Medicaid the lower amount.*

(Emphasis added.) As a result, the ALJ ruled that AHCA was entitled to be reimbursed the full $177,747.91 from the settlement in satisfaction of its Medicaid lien.

## ANALYSIS

### 1. Standard of Review

An ALJ's findings of fact are reviewed to determine if they are supported by competent, substantial evidence. § 120.68(7)(a) & (10), Fla. Stat. Competent, substantial evidence is evidence that establishes "'a substantial basis of fact from which the fact at issue can be reasonably inferred or such evidence as is sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached.'" *Mobley v. State*, 181 So. 3d 1233, 1236 (Fla. 1st DCA 2015) (quoting *Bill Salter Advert., Inc. v. Dep't of Transp.*, 974 So. 2d 548, 550-51 (Fla. 1st DCA 2008)). An ALJ's conclusions of law are reviewed de novo. *J.S. v. C.M.*, 135 So. 3d 312, 315 (Fla. 1st DCA 2012); *Sw. Fla. Water Mgmt. Dist. v. Save the Manatee Club, Inc.*, 773 So. 2d 594, 597 (Fla. 1st DCA 2000).

### 2. The Law

Under Florida's Medicaid Third Party Liability Act, AHCA is responsible for administering Florida's Medicaid program. § 409.902, Fla. Stat. Florida grants AHCA the right to be fully reimbursed for Medicaid payments made to a recipient who receives a personal injury judgment, award or settlement. § 409.910(1), Fla. Stat. To fulfill the legislative intent in section 409.910, AHCA holds a lien, as well as subrogation and assignment rights when it "provides, pays for, or becomes liable for medical care under the Medicaid program." § 409.910(6), Fla. Stat. When there is a recovery in a tort action, AHCA's reimbursement is determined by a statutory formula set forth in section 409.910(11)(f), Florida Statutes. However, the paragraph (11)(f) allocation is merely a default allocation so as not to run afoul of

the federal Medicaid anti-lien provision, if, for example, the majority of an award (after attorney's fees and costs) is not allocable to medical expenses. As recently explained by the Florida Supreme Court in *Giraldo v. Agency for Health Care Administration*, 248 So. 3d 53 (Fla. 2018) ("*Giraldo II*"):

> Medicaid is a joint federal-state cooperative program that helps participating states provide medical services to residents who cannot afford treatment. *Arkansas Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268 . . . (2006). The federal Medicaid Act—title XIX of the Social Security Act—governs regulation of the program, and it mandates that participating states follow the Medicaid Act by "compl[ying] with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program." *Ahlborn*, 547 U.S. at 275 . . . . Significantly, the Act contains a general anti-lien provision protecting Medicaid recipients by broadly prohibiting state Medicaid agencies from imposing liens against any of a recipient's property. 42 U.S.C. § 1396p(a)(1) (2012). However, the Act contains a narrow exception to the anti-lien prohibition requiring states to seek reimbursement for their Medicaid expenditures by pursuing payment from third parties legally liable for the recipients' medical expenses. *Ahlborn*, 547 U.S. at 284–85 . . . . These provisions "pre-empt[ ] a State's effort to take any portion of a Medicaid beneficiary's tort judgment or settlement not 'designated as payments for medical care,'" *Wos v. E.M.A.*, 568 U.S. 627 . . . (2013) (quoting *Ahlborn*, 547 U.S. at 284 . . .), and set "a ceiling on a State's potential share of a beneficiary's tort recovery," *id.* at 633 . . . .

*Id.* at 55. The supreme court continued:

> The portion of the Medicaid Act defining the "ceiling"—the limitation on what portion of a recipient's tort recovery a state can be subject to a lien—reads in relevant part:
>
> > *[T]o the extent that payment has been made under the State plan for medical assistance for*

8

*health care items or services furnished* to an individual, the State is considered to have acquired the rights of such individual to payment by any other party *for such health care items or services.*

42 U.S.C. § 1396a(a)(25)(H) (2012) (emphasis added). "Such health care items or services" is most naturally and reasonably read as referring to those "health care items or services" already "furnished" and for which "payment has been made under the State plan." *Id.* Those are the health care items and services for which "the State is considered to have acquired . . . rights" by assignment "to any payments by any other party," *id.*, and they are past medical expenses only. We see no reasonable way to read this language as giving states a right to assignment of that portion of a tort recovery from which the injured party will be expected to pay his or her anticipated medical expenses in the future, without aid from the government.

*Id.* at 56.

Following the United States Supreme Court's decision in *Wos*, our supreme court accepted AHCA's concession that *Wos* afforded a plaintiff "the opportunity to demonstrate that a Medicaid lien exceeds the amount recovered by the plaintiff for medical expenses." *Garcon v. Fla. Agency for Health Care Admin.*, 150 So. 3d 1101 (Fla. 2014) (Mem.). "[I]n compliance with *Wos*, the Florida Legislature passed section 409.910(17)(b), which provides that a Medicaid recipient can rebut the result of the [(11)(f)] formula." *Mobley* 181 So. 3d at 1235. The 2016 version of section 409.910(17)(b) provides two methods by which a Medicaid recipient can "successfully challenge the amount payable to [AHCA]." A recipient may prove by clear and convincing evidence that either (1) "a lesser portion of the total recovery should be allocated as reimbursement for past and future medical expenses than the amount calculated by" the paragraph (11)(f) formula; or (2) "Medicaid provided a lesser amount of medical assistance than that asserted by [AHCA]." § 409.910(17)(b), Fla. Stat. Relevant to the issue presented in this appeal, "when AHCA has not

9

participated in or approved a settlement, the administrative procedure created by section 409.910(17)(b) . . . serves as a means for determining whether a lesser portion of a total recovery should be allocated as reimbursement for medical expenses in lieu of the amount calculated by application of the formula in section 409.910(11)(f)." *Delgado v. Agency for Health Care Admin.*, 237 So. 3d 432, 435 (Fla. 1st DCA 2018) (bracketed language omitted).

When the Medicaid recipient settles with the tortfeasor or tortfeasors and the settlement, similar to the present one, does not include itemized allocations for damages, proving what portion of the settlement was allocated to past medical expenses is challenging. *Wos*, 568 U.S. at 634. Even if the damages represented in the settlement proceeds have been allocated by the parties, there is always the distinct possibility "that Medicaid beneficiaries and tortfeasors might collaborate to allocate an artificially low portion of a settlement to medical expenses." *Id.*; *see also Ahlborn*, 547 U.S. at 288 (expressing the Supreme Court's concern over "the risk that parties to a tort suit will allocate away the State's interest."). Further complicating matters is when the settlement agreements are confidential, like the ones in the instant case. Revealing the terms of the agreements in this latter instance risks piercing any number of privileges and, potentially, opens a pandora's box of possible sanctions against the parties and their attorneys. The answer to this dilemma has been for Medicaid recipients to utilize a pro rata allocation methodology, which has been met with decidedly mixed reviews.

The Supreme Court in *Wos* acknowledged that when a judgment or stipulation does not exist that allocates the plaintiff's tort recovery among the existing claims, "a fair allocation of such a settlement may be difficult to determine," but went on to observe that "[t]rial judges and trial lawyers . . . can find objective benchmarks to make projections of the damages the plaintiff likely could have proved had the case gone to trial." 568 U.S. at 640. Yet, on the whole, since *Ahlborn* and *Wos* were decided, there has been no national consensus as to how a Medicaid recipient can prove by what amount the lien should be reduced. *Compare State of Colo. Dep't of Health Care Policy & Fin. v. S.P.*, 356 P.3d 1033 (Colo. Ct. App. 2015) (holding that under a "proportionate allocation" formula to determine what percentage of the recipient's $1 million

lump-sum settlement should be allocated to past medical expenses, for purposes of the Department's statutory lien, it was appropriate for the trial court to use the amount Medicaid actually paid rather than amounts billed by health care providers, in proportion to the stipulated value of the tort claim of $4.9 million); and *In re E.B.*, 729 S.E.2d 270 (W. Va. 2012) (holding that the ratio formula was a permissible method for calculating the amount of the settlement to the recipient's medical expenses, for purposes of determining the Department's subrogation lien interest); with *Matter of Estate of Martin v. Ark. Dep't of Human Servs.*, 574 S.W.3d 693 (Ark. Ct. App. 2019) (criticizing the proportional approach for "overlook[ing] the certainty and objectivity of past medical damages" and "ignor[ing] the policy considerations inherent in Medicaid's recovery laws, which are based on the complementary premises that (1) a tortfeasor (and no other party) should be liable for paying for the harm that the tortfeasor caused, and (2) Medicaid is the payer of last resort"); and *Neal v. Detroit Receiving Hosp.*, 903 N.W.2d 832, 842 (Mich. Ct. App. 2017) (reversing and remanding to the trial court, in part, "because [] there is no indication in the record that the trial court reviewed the confidential settlement and found it reasonable, fair, and proper regarding the different categories of plaintiff's claimed damages").

In *Willoughby v. Agency for Health Care Administration*, 212 So. 3d 516 (Fla. 2d DCA 2017) *approved, Giraldo v. Agency for Health Care Adnim.*, 248 So. 3d 53 (Fla. 2018), the Medicaid recipient, Mr. Willoughby, and various defendants settled his tort claim for $4,000,000. AHCA sought to recover from the settlement proceeds the approximately $148,000 it had expended through Medicaid. Mr. Willoughby filed a petition with the DOAH seeking to decrease AHCA's lien amount. Prior to the hearing, Mr. Willoughby and AHCA proactively stipulated that the value of Mr. Willoughby's personal injury damages was at least $10,000,000; that he suffered at least $23,800 in lost wages, and a loss of future earning capacity between nearly $800,000 and $2,000,000; his past medical expenses paid by Medicaid were almost $148,000; and his future medical expenses would exceed $5,000,000. Finally, AHCA and Mr. Willoughby stipulated that his past noneconomic damages exceeded $1,000,000. Notably, the parties stipulated that, under

11

the settlement, Mr. Willoughby recovered less than the $147,019.61 lien as payment for his past medical expenses.

To prevail on his petition to decrease AHCA's presumptive lien amount, Mr. Willoughby utilized the same pro rata allocation methodology as was urged on the ALJ by Appellant, below. Even so, the Second District considered that methodology with mixed emotions:

> We do not condemn this approach; we recognize that ALJs frequently resort to this methodology in calculating amounts available to satisfy Medicaid liens. *See Osmond v. Agency for Health Care Admin.*, Case No. 16–3408MTR (Fla. DOAH Hrgs. Sept. 8, 2016); *Bryant v. Agency for Health Care Admin.*, Case No. 15–4651MTR (Fla. DOAH Feb. 12, 2016). But we also acknowledge that the U.S. Supreme Court has not explicitly endorsed this method. The Supreme Court "in no way adopted the formula as a required or sanctioned method to determine the medical expense portion of an overall settlement amount." *Smith v. Agency for Health Care Admin.*, 24 So. 3d 590, 591 (Fla. 5th DCA 2009). We remain mindful, though, that "[a]n irrebuttable, one-size-fits-all statutory presumption is incompatible with the Medicaid Act's clear mandate that a State may not demand any portion of a beneficiary's tort recovery except the share that is attributable to medical expenses." *Wos*, 133 S. Ct. at 1399. . . .

212 So. 3d at 522-23.

The Fifth District, on the other hand, repudiated a similar methodology propounded in *Smith*, cited above in *Willoughby*. It reasoned:

> [T]he formula used by the *Ahlborn* parties is problematic in that it assumes the Medicaid lien amount to be the only medical expense included by the plaintiff as part of his or her overall damage claim, which is not a reasonable assumption. Stated another way, without knowing how much of a plaintiff's total damage claim is comprised of medical expenses, there is no way to calculate the medical

12

expense portion of a settlement by simply comparing the damage claim to the ultimate settlement amount.

24 So. 3d at 591.

Later, in *Davis v. Roberts*, 130 So. 3d 264 (Fla. 5th DCA 2013), the Fifth District applied its holding in *Smith* to a case in which the parties entered into settlement negotiations, ultimately agreeing that $1,000,000 would go to the Medicaid recipient. The parties agreed that the $1,000,000 settlement represented 10% of the total value of the recipient's damages, including her past medical expenses. Consequently, the settlement agreement allocated $23,926.88 toward her past medical expenses.

The appellants in *Davis*—the parents and natural guardians of the recipient—petitioned the trial court to approve the settlement and argued that AHCA's lien for past medical expenses should be correspondingly reduced. At the evidentiary hearing, the appellants put on evidence that the $1,000,000 settlement was in their child's best interest and that the allocation to compensate her for past medical expenses was fair and reasonable. AHCA did not put on any evidence regarding the fairness or reasonableness of the settlement amount or the allocation. Instead, it argued that section 409.910 controlled and "no legal authority authorized Florida courts to allow Medicaid recipients to prove that some smaller portion of their settlement was comprised of medical expenses." *Id.* at 267. The trial court agreed and awarded AHCA its full lien amount, assuming that the language of section 409.910(11)(f) was mandatory and precluded it from considering evidence to support limiting payment of the lien. *Id.*

The Fifth District reversed. It acknowledged it had been presented a similar set of facts in *Smith*, and AHCA correctly argued that it had held in *Smith* that section 409.910(11)(f) had to be used to determine the amount payable to AHCA in that case. But, the Fifth District went on to clarify *why* it held as it did in *Smith*:

> [W]e did not do so because we determined the language in the statute was mandatory; rather, we determined the formula had to be used because there was no allocation in the settlement agreement *and the plaintiff proffered no*

13

*evidence at the hearing* from which the trial court could determine how much of the damages represented medical expenses.

*Id.* at 268 (emphasis added) (footnote omitted). In fact, it agreed with the Fourth District's conclusion in *Roberts v. Albertson's Inc.*, 119 So. 3d 457 (Fla. 4th DCA 2013) (as modified on rehearing), "that section 409.910(11)(f) is a 'default allocation.'" *Id.* at 270 (citing *Roberts*, 119 So. 3d at 465). Accordingly, it reiterated its holding in *Smith*, "that a Medicaid recipient 'should be afforded the opportunity to seek the reduction of a Medicaid lien amount by demonstrating, with evidence, that the lien amount [established by section 409.910(11)(f)] exceeds the amount recovered for medical expenses.'" *Id.* (quoting *Smith*, 24 So. 3d at 592). The Fifth District concluded that the trial court erred in believing it was "'hamstrung by section 409.910' and without discretion to reduce the lien." *Id.* It held: "This was error because our decision in *Smith* gave the trial court the authority to reduce the lien *if there was sufficient evidence introduced to support the reduction.*" *Id.* (emphasis added). It stressed that, to the extent it was unclear in *Smith*, *Wos* and *Roberts* "expressly authorize a plaintiff to seek, by way of an evidentiary hearing, the reduction of the Medicaid lien amount established by the statutory allocation." *Id.*

Recently, in *Gray v. State*, No. 1D17-355 (Fla. 1st DCA Sept. 3, 2019), this Court affirmed the ALJ's rejection of Gray's claim that AHCA's Medicaid lien should have been reduced by using a pro rata formula, rather than the formula provided in section 409.910(11)(f). As we observed, the evidence offered by Gray "consisted of the verdict form, the final judgment, and letters providing the amount of the liens imposed by Florida's Medicaid Program, Georgia's Medicaid Program, and Florida's Brain and Spinal Cord Injury Program." *Slip op. at 5.* We held that "[n]one of these records showed that the $10,000 recovery was allocated in any way between different categories of damages, costs, or attorney's fees." *Id.* Although the hearing proceeded under the more burdensome clear and convincing standard of proof, we also held that "Gray could not show—even by a preponderance of the evidence—that an amount other than the total recovery of $10,000 should be considered when applying the statutory formula to determine the amount of the Medicaid lien." *Id.* We concluded that

"in situations such as this case, when the plaintiff fails to produce evidence or present testimony showing that the lien amount should be reduced, the plain language of section 409.910(11)(f) requires the ALJ to apply the statutory formula." *Id.* at 6.

Here, we do not read *Gray, Willoughby*, *Smith*, or *Davis* as condoning the ALJ's wholesale rejection of Appellant's evidence on the basis that the pro rata formula was speculative and that Appellant's case was "flawed" due to the confidential nature of the settlement agreement. To conclude otherwise would be to ignore the assurance expressed in those decisions that under 409.910(17)(b), a Medicaid recipient is entitled to put on evidence to prove that he is entitled to a reduction of the Medicaid lien. Nor did the instant case suffer the same evidentiary infirmities suffered in *Smith* and *Gray*. In this case, Appellant presented expert testimony directed towards the appropriate share of the settlement funds to be allocated to past medical expenses. AHCA did not present any evidence to refute the experts' opinions. Under our facts, there was no competent, substantial evidence to support the ALJ's findings or conclusions. Consequently, we hold the supreme court's decision in *Giraldo II* is decisive.

In *Giraldo II*, the supreme court emphasized that the Medicaid recipient, utilizing a pro rata allocation identical to the allocation advanced in the present case, presented "uncontested expert testimony establishing that only $13,881.79 of the [unallocated] $1 million tort recovery represented compensation for [the recipient's] past medical expenses." *Giraldo II*, 248 So. 3d at 54. It went on to decree:

> Because we hold that the federal Medicaid Act prohibits AHCA from placing a lien on the future medical expenses portion of a Medicaid recipient's tort recovery, we remand with instructions that the First District direct the ALJ to reduce AHCA's lien amount to $13,881.79. Although a factfinder may reject "uncontradicted testimony," there must be a "reasonable basis in the evidence" for the rejection. *Wald v. Grainger*, 64 So. 3d 1201, 1205–06 (Fla. 2011). Here, [the Medicaid recipient] presented uncontradicted evidence establishing $13,881.79 as the settlement portion properly allocated to his past medical

15

expenses, and there is no reasonable basis in this record to reject [his] evidence.

*Id.* at 56. For that reason, the court concluded there was no further factfinding required. *Id.*

## CONCLUSION

In the present case, as in *Giraldo II,* Appellant presented competent, substantial, and uncontradicted evidence establishing $11,838.01 as the settlement portion properly allocated to past medical expenses. Because we hold there was no reasonable basis in the record to reject that evidence, the ALJ erred as a matter of law in concluding that Appellant failed to prove his case by a preponderance of the evidence. Accordingly, as did the supreme court in *Giraldo II,* we, too, remand the cause to DOAH for the ALJ to reduce AHCA's lien to $11,838.01, without conducting further factfinding.

REVERSED and REMANDED with instructions.

RAY, C.J., and BILBREY, J., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Floyd Faglie of Staunton & Faglie, PL, Monticello, for Appellant.

Alexander R. Boler, Tallahassee, for Appellee.